UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN BUTTERFLY ASSOCIATION d/b/d THE NATIONAL BUTTERFLY CENTER, AND MARIANNA TREVINO<br>    *Plaintiffs*<br><br>VS.<br><br>NEUHAUS & SONS, LLC, BRIAN KOLFAGE, AND WE BUILD THE WALL INC. et al<br>    *Defendants* | § § § § § § § § § § § § § § § | CASE NO. 7:19-cv-00411 |

___

**FISHER DEFENDANTS'
FIRST AMENDED MOTION TO DISMISS**
___

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW **FISHER INDUSTRIES** and **FISHER SAND AND GRAVEL CO.**, Defendants and file this their First Amended Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and would respectfully show as follows:

**I.
SUMMARY OF MOTION AND ARGUMENT**

Defendants would show that the Plaintiffs' First Amended Petition fails to state a claim upon which relief can be granted. Plaintiffs have asserted three causes of action against the Fisher Defendants: nuisance, violation of the Texas Water Code Section

11.086(a), and defamation and business disparagement. Plaintiffs have failed to state a claim based on common law nuisance, because Plaintiffs have failed to allege any facts showing that Defendants caused any interference with Plaintiff's property or that Plaintiff suffered any legal injury to Plaintiff's property, and Plaintiff Marianna Trevino Wright does not own any of property at issue in this case and, therefore, cannot make out a claim for nuisance related to a property. Plaintiffs have not stated a claim under the Texas Water Code because Plaintiffs have not alleged that Defendants diverted any water onto Plaintiff's property, or that it caused any damage to Plaintiff's property, and Plaintiff Marianna Trevino Wright does not own any of the property identified in this case and, therefore, cannot make out a claim for violations of the Texas Water Code related to a property. Finally, Plaintiffs have failed to state a claim upon which relief can be granted under defamation because Plaintiffs do not allege that these Defendants made or published any defamatory statements. Further, Plaintiffs do not allege any damages resulting from any alleged defamatory statements. In addition, Plaintiffs claims should be dismissed pursuant to the Texas Citizens Participation Act (TCPA). TEXAS CIV. PRAC. & REM. CODE, § 27.001 *et seq.* and Defendants should have and recover attorney's fees and costs. Finally, with respect to Plaintiff Wright, none of the statements identified in Plaintiffs' Petition mention Plaintiff Wright or are directed at her personally, so she has failed to state a claim upon which relief can be granted.

Plaintiffs have failed to state a claim upon which relief can be granted because there can be no presumption that damages will ever occur. Damages which are remote and speculative are not recoverable. The factual uncertainty of the occurrence of any

damages whatsoever defeats recovery. For that reason, Plaintiffs are unable to re-plead in order to defeat a motion to dismiss.

## II.
### BACKGROUND

In a related case the United States at the request of the USIBWC filed a Complaint for Injunctive Relief against Fisher Industries and Fisher Sand and Gravel Co., Neuhaus and others relating to property nearby the North American Butterfly Association (hereinafter "NABA") property. Civil Action No. 7:19-CV-403; *United States of America vs. We Build the Wall, Inc., Fisher Industries, Fisher Sand and Gravel Co., and Neuhaus and Sons, LLC,* in the United States District Court for the Southern District of Texas, McAllen Division. A First Amended Complaint for Injunctive Relief was filed by the United States on December 16, 2019. In that case, the government alleges that pursuant to a treaty with Mexico, it is required to approve all construction projects in the Flood Plain of the Rio Grande border with Mexico, and that they wanted to prohibit the Fisher Defendants from constructing the subject fence until the USIBWC determined that it was acceptable. On December 18, 2019, an Agreed Amended Temporary Restraining Order was entered in the related USBWC case which pertains to the very property at issue in the present case. As the court is aware from the proceedings in the IBWC case, the Fisher Defendants have produced the requested studies and information to the IBWC to obtain approval to move forward with their project. The Plaintiffs in the present case claim that if a fence or wall is constructed on nearby property, it could cause flooding and damage to Plaintiffs property. Ultimately, it is the USIBWC which will review the data and make the determination as to whether construction should be permitted on the US side of the Rio Grande river.

III.
**PROCEDURAL HISTORY**

On December 3, 2019, NABA and Marianna Trevino Wright filed an Original Petition and Application for Injunctive Relief against Defendants Neuhaus & Sons, LLC, Brian Kolfage, and We Build the Wall, Inc.; Cause No. C-5049-19-I, in the 398th Judicial District Court of Hidalgo County, Texas. On December 13, 2019, the Plaintiffs filed a First Amended Petition and Application for Injunctive Relief claiming nuisance, violation of the Texas Water Code, defamation & business disparagement and adding Fisher Industries and Fisher Sand and Gravel Co. as a Defendant in the case. In its Petition, Plaintiff NABA alleges that it owns property near property owned by Defendant, Neuhaus & Sons, LLC (hereinafter "Neuhaus") and that Defendants are constructing an illegal border fence in the US floodplain along the banks of the Rio Grande River on the Neuhaus property which could possibly impact NABA's property by changing the flow of surface water of the Rio Grande River. Plaintiffs claim that the fence will cause a "prospective nuisance"[1], and that the Butterfly Center "will be injured by and overflow of water" which "will result in an unlawful diversion of water."[2] NABA claims that the Defendants actions area nuisance and violate the Texas Water Code and ask the Court for a temporary restraining order and injunction to prevent Defendants from constructing a border fence on Defendant's own property. On or about January 9, 2020, this Court concluded a hearing on the IBWC's and NABA's requests for injunctive relief, and denied the motions.

On December 23, 2019, Plaintiffs filed a Second Amended Complaint and Application for Injunctive Relief denying subject matter jurisdiction and claiming wrongful

---

[1] Plaintiffs' First Amended Petition, page 5, paragraph 22.
[2] Plaintiffs' First Amended Petition, page 6, paragraph 24.

removal. That pleading was stricken by this Court, so the operative pleading is Plaintiff's First Amended Petition. Plaintiffs asserted causes of action for Nuisance, Violation of the Texas Water Code, Defamation & Business Disparagement, and Application for Injunctive Relief.

## IV.
### FEDERAL REGULATORY FRAMEWORK

In the 1930's, the International Boundary and Water Commission, United States and Mexico, United States Section ("USIBWC") constructed the Lower Rio Grande Flood Control Project. The purpose of the project is to provide flood protection for communities along the Rio Grande River. The Project includes, in part, river levees and floodways adjacent and parallel to the mainstream of the Rio Grande River in Hidalgo County, Texas. In 1961, the State of Texas deeded to the USIBWC the bed and banks of the Rio Grande River in Hidalgo County. The United States and Mexico entered into a treaty in 1970 which requires that the United States prohibit any works in the United States that will, in the judgment of the Commission, cause deflection or obstruction of the normal flow of the Rio Grande River or its flows. *(Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary,* U.S.-Mex., Art. IV, Now. 23, 1970, T.I.A.S. 7313.) To implement the United States' 1970 Treaty obligations, the USIBWC requires proponents of projects in the US floodplain to submit hydraulic modeling for their project to the USIBWC. According to the 1944 Water Treaty between Mexico and the United States, under Article 24 of the Treaty, the USIBWC "shall have, to the extent necessary to give effect to the provisions of this Treaty, exclusive jurisdiction over the works constructed exclusively in the territory of its country whenever such works shall be connected with or shall directly affect the execution of the provisions

of this Treaty." If there is no deflection or obstruction, the USIBWC issues a letter of no objection to the proponent of the project and the project may proceed.

## IV.

### FAILURE TO STATE A CLAIM – NUISANCE AND WATER CODE VIOLATION

Defendants would show that Plaintiffs have failed to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6) provides as a defense the failure of a complaint to state a claim for which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient well pleaded facts, when accepted as true, and viewed in the light most favorable to the plaintiff, allow the court to draw the reasonable inference of responsibility for damages caused by misconduct. A claim for relief is implausible on its face when the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct resulting in damages. *See Harold H. Huggins Realty, Inc., P.E. et al. v. FNC, Inc.,* 634 F.3d 787, 796 (5th Cir. 2011). A claim for relief is implausible on its face when the well pleaded facts fail to permit the court to infer the fact of damages which are not remote or speculative. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). One of the fundamental rules of damages is that to be compensable, the damages must be direct and reasonably certain, not remote or speculative. See *Total E & B USA, Inc. vs. Marubeni Oil & Gas (USA), Inc.,* 393 F. Supp. 3rd 515, 537 (S.D. Tex. 2009). Plaintiff has alleged three causes of action against the Fisher Defendants, nuisance and violations of

the Texas Water Code, and defamation. Under the current state of facts, Plaintiffs have not pled a claim upon which relief can be granted.

A. **Nuisance.**

Plaintiffs have pled a Texas common law nuisance claim. Recently, the Texas Supreme Court addressed the elements and nature of a nuisance claim. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016). In *Crosstex*, the Texas Supreme Court confirmed that a private 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Id.* at 593. The Court clarified that the term 'nuisance' describes a type of injury that the law has recognized can give rise to a cause of action because it is an invasion of a plaintiff's legal rights*. Id.* at 594. By requiring a "substantial" interference with the plaintiffs' use and enjoyment of their property, the Court set a minimum threshold that confirms that the law "does not concern itself with trifles, or seek to remedy all of the petty annoyances and disturbances of everyday life in a civilized community even from conduct committed with knowledge that annoyance and inconvenience will result." *Id* at 595.

In this case, not only do Plaintiffs not have any substantial interference with their use and enjoyment of their property from anything related to any of the Defendants, but they have pled that they have no interference at all at this time. Rather, they allege that the "wall" is a "prospective nuisance". Further, Plaintiffs have not alleged any actual damages suffered by Plaintiffs, only that they "will" be injured. This is not enough to state a claim for nuisance under Texas law. And with respect to Plaintiff Wright, Plaintiffs' pleadings clearly show she is not even an owner of the Plaintiffs' property so she has not

7

alleged a claim upon which she can recover. Accordingly, Plaintiffs have failed to plead a nuisance claim upon which relief can be granted by either of the Plaintiffs, and that claim should be dismissed against all Defendants.

B.  **Texas Water Code Violations.**

Plaintiffs claim that Defendants have violated Texas Water Code § 11.086(a) which prohibits a person from diverting or impounding the natural flow of surface water that damages the property of another by the overflow of the water diverted or impounded. Surface water is "[t]hat which is defused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow." *Dalon v. City of DeSoto,* 852 S.W.2d 530, 538 (Tex. App.—Dallas 1992, writ denied)(quoting *City of Princeton v. Abbott*, 792 S.W.2d 161, 163 (Tex. App.—Dallas 1990, writ denied)). Surface waters do not follow a defined course or channel and do not gather or form a natural body of water. *Dalon*, 852 S.W.2d at 538. When rainfall is under control, either by ditches, tanks, ponds, or pipes, it is no longer considered surface water. *Id*. The chief characteristic of surface water is its inability to maintain identity and existence as a body of water, distinguishing it from water flowing in a natural watercourse. *Id.* The statutory elements of water diversion claim are: (1) a diversion or impoundment of surface water which (2) causes (3) damage to the property of the plaintiff landowner. *Lakeside Village Homeowners Assn., Inc., v. Belanger*, 545 W.W.3d 15, 34 (Tex. App. -- El Paso 2017, pet. denied) (citing *Kraft v. Langford,* 565 S.W.2d 223, 229 (Tex. 1978).

In this case, Plaintiffs claim that they "will" be injured by an overflow of water, but they do not allege that there has been any actual water diversion to date, nor have they

8

alleged that they have incurred any actual injury or damages from any overflow of surface water. In fact, plaintiffs' have not made any claim identifying what surface is even being referred to since a river, such as the Rio Grande, is not considered surface water under this section of the Water Code. And with respect to Plaintiff Wright, Plaintiffs' pleadings clearly show she is not even an owner of the Plaintiffs' property so she has not alleged a claim upon which she can recover. Accordingly, Plaintiffs have failed to plead a claim under Texas Water Code § 11.086 upon which relief can be granted, and that claim should be dismissed against all Defendants.

C. **Summary**.

Plaintiff's claims of Nuisance and Water Code Violations must be dismissed because there exists no set of facts under which Plaintiff is entitled to recover any damages against Defendants. Plaintiff has pled that it is the intent of Defendants to build a permanent steel wall on a cleared portion of the banks of the Rio Grande River within the floodplain which would cause a redirection and buildup of surface water during flooding events and that the redirection of surface water and the accompanying debris would cause permanent damage to Plaintiff's nearby property. Plaintiff has alleged remote and speculative damages which have not occurred. In addition to being remote and speculative, the fact of no damages establishes that Plaintiffs claims against these Defendants cannot survive a motion to dismiss. The statements in Plaintiffs petition to the effect that flooding and damage is an uncertain possibility defeat any recovery. There can be no presumption that a flood event will occur, or that plaintiffs will suffer any damages. Crucially, the factual uncertainty of any damages whatsoever as against these Defendants is fatal to Plaintiffs' claim for relief. While some uncertainty as to the exact

9

amount of damages is permissible, uncertainty as to fact of damages will defeat recovery. See *Blase Industries Corporation vs. Anorad Corporation, et al.,* 442 F.3d 235, 238 (5th Cir. 2006). Based upon the foregoing, Plaintiffs have failed to state a claim upon which relief can be granted against Defendants and these claims need to be dismissed.

## VI.
## TCPA

The Fisher Defendants deny that they made any statements whatsoever regarding the Plaintiffs. Nevertheless, Plaintiffs allege the Fisher Defendants are somehow responsible for statements made by Defendants Kolfage and/or WBTW under a theory of civil conspiracy. Though, the Fisher Defendants did not make the statements and factually have no connection with the statements, Defendants must defend themselves from the asserted claims. In this regard, Defendants would show that defamation allegations against them should be dismissed under The Texas Citizens Participation Act ("TCPA"), Texas' anti-SLAPP statute. TEX. CIV. PRAC. & REM. CODE § 27.003(a). "SLAPP" stands for "Strategic Lawsuit Against Public Participation," and anti-SLAPP statutes have been enacted in many states, including Texas, to address frivolous lawsuits brought against defendants who properly exercise their First Amendment rights. *See In re Lipsky*, 411 S.W.3d 530, 536 n.1, 539 (Tex. App.—Fort Worth 2013, no pet.). The Texas legislature enacted the TCPA in 2013 in order to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002.

The statute "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). The Texas Supreme Court has explained that "matters of public concern" are "[p]ublic matters [that] include 'a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)(citing *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011)).

The TPCA directs courts to liberally interpret the provisions of the Act in order to fully effectuate its purpose which is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file a meritorious lawsuit for demonstrable injury. *Schmidt v. Crawford*, 584 S.W.3d 640, 647 (Tex. Civ. App. – Houston [1st Dist.] 2019, no pet). Under the TCPA a defendant moving for dismissal need show only that the plaintiff's legal action is based upon, relates to, or is in response to the defendant's exercise of the right of free speech. That is to say that a communication, supposedly if made, was made in connection with a matter of public concern – not that the communication actually occurred. *Hersh v. Tatum*, 526, S.W.3d 462, (Tex. 2017). The pertinent portion of the TCPA defines "exercise of right of free speech" as a communication made in connection with a matter of public concern. Specific mention of the public concern within the statement is not required; all that is required is a tangential relation to a matter of public concern. *Exxon Mobil Pipeline Company v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017).

11

Courts within the Fifth Circuit have applied the TCPA to lawsuits such as this one, that are filed in federal court. *See, e.g., Nguyen v. Hoang*, 318 F. Supp3d 983 (S.D. Tex. 2018); *Charalambopoulos v. Grammer*, 3:14-CV-2424-D, 2015 WL 390664, at *3 (N.D. Tex. Jan. 29, 2015) (applying the TCPA); *Henry v. Lake Charles American Press, LLC*, 566 F.3d 164, 169–70 (5th Cir. 2009) (applying Louisiana anti-SLAPP statute).

The TCPA sets forth a special expedited procedure. A defendant who believes the lawsuit was filed in response to a valid exercise of First Amendment rights may file a motion to dismiss, and the court must conduct a hearing on the motion "not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing ... [but] in no event shall the hearing occur more than 90 days after service of the motion," with certain exceptions. *In re Lipsky*, 411 S.W.3d at 539; *Nguyen v. Hoang*, 318 F. Supp3d 983, 998 (S.D. Tex. 2018)(citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.004. The court must then rule on the motion no later than thirty days after the hearing. *Id.* (citing § 27.005).

The court "shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005. "The 'right of free speech' refers to communications related to 'a matter of public concern' which is defined to include an issue related to: '(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace.' " *In re Lipsky*, 460 S.W.3d at 586 n.4. "

12

If the Defendant meets its burden, the Plaintiff must establish by "clear and specific evidence" each and every element of the claims in question. TEX. CIV. PRAC. & REM. CODE § 27.005(c). The TCPA does not define what "clear and specific evidence" means for a plaintiff's prima facie case, but the statute provides that courts can consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Id. at § 27.006(a). "Texas courts have defined 'prima facie' evidence as the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Lipsky*, 411 S.W.3d at 539.

There should be no debate that building the border fence is a controversial issue and a matter of public concern. The Plaintiff in this matter, the North American Butterfly Association, is using social media to fight the border fence in any way it can, including a GoFundMe campaign attempting to get donations from the public to fight the border fence. *See* Exhibits A-01 - National Butterfly Center's Go Fund Me page; and A-02, National Butterfly Center's twitter page, attached. Notable in these exhibits are the public statements made against Kolfage and We Build the Wall by the very Plaintiffs who are complaining about such statements in this matter. North American Butterfly is also currently fighting the construction of the border fence on its own property in a separate federal action against DHS. *See* Exhibit A-03, a copy of the underlying decision in Cause Number 19-5052, North American Butterfly Association v. Nielsen, pending in the United States Court of Appeal for the District of Columbia Circuit.

The border fence is a matter of public concern on both the local and the national levels. In October of 2018, the federal government waived federal laws to allow for the expeditious construction of barriers and roads in Hidalgo County, Texas. *See* Exhibit A-

04. This waiver was published in the Federal Register. *See* Exhibit A-05. The border wall / fence is the subject of frequent news reporting locally and nationally. *See* Exhibit A-06, and Exhibit A-07. And tragedies related to border activities or crossings is frequently in the news. *See* Exhibit A-08.

As these exhibits show, the border fence and border activities are subjects of public concern at this time in our country's history. All of the speech complained of by Plaintiffs is free speech which is related to 'a matter of public concern' and is protected under Texas law against claims like this. Pursuant to TCPA, the claims of both Plaintiffs against all Defendants should be dismissed. Further, it is apparent that none of the statements complained of by Plaintiffs direct name Plaintiff Wright individually, so as additional ground for dismissal, her claims should be dismissed for failing to state a claim upon which relief can be granted. Further, Defendants should be awarded their costs in having to defend this matter.

WHEREFORE, Premises Considered, Defendants Fisher Industries and Fisher Sand and Gravel Co. pray that this Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted and that Plaintiffs' claims against these Defendants be in all things dismissed, and for recovery of all of Defendants' costs associated in defending these claims.

Respectfully submitted,

/s/ Mark J. Courtois
MARK J. COURTOIS
Texas Bar No. 04897650

        Email: mjcourtois@ffllp.com
        Direct: 713-620-7226

        FUNDERBURK FUNDERBURK COURTOIS, LLP
        2777 Allen Parkway, Suite 1000
        Houston, Texas 77019
        (713) 526-1801
        (713) 526-2708 - FAX

        ATTORNEY IN CHARGE
        FISHER INDUSTRIES, AND FISHER SAND AND GRAVEL CO.

## **CERTIFICATE OF SERVICE**

I, MARK J. COURTOIS, hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known Filing Users AND has been accomplished by Notice of Electronic Filing pursuant to Local Administrative Procedure 9(a) on this, the 20th day of January, 2020.

        */s/ Mark J. Courtois*
        MARK J. COURTOIS