UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

**EXHIBIT A**

| | | |
|---|---|---|
| NORTH AMERICAN BUTTERFLY | § | |
| ASSOCIATION d/b/d THE | § | |
| NATIONAL BUTTERFLY CENTER, | § | |
| AND MARIANNA TREVINO | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | CASE NO. 7:19-cv-00411 |
| VS. | § | |
| | § | |
| | § | |
| NEUHAUS & SONS, LLC, BRIAN | § | |
| KOLFAGE, AND WE BUILD THE | § | |
| WALL INC. et al | § | |
| *Defendants* | § | |

## DECLARATION OF MARK J. COURTOIS

I, Mark J. Courtois, declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

I am an attorney admitted to practice before this Court and am managing partner of the law firm of Funderburk Funderburk Courtois, LLP, attorneys for Defendants Fisher Industries and Fisher Sand and Gravel Co. (the "Fisher Defendants").

I submit this declaration in support of the Fisher Defendants' First Amended Motion to Dismiss the claims asserted by Plaintiffs North American Butterfly Association ("NABA") and Marianna Trevino Wright in this matter.

Attached hereto as Exhibit A-01 is a true and correct copy of the Go Fund Me page for the National Butterfly Center copied from the internet on January 7, 2020 by myself.



**EXHIBIT A**

Attached hereto as Exhibit A-02 is a true and correct copy of the National Butterfly twitter page copied from the internet on January 7, 2020 by myself.

Attached hereto as Exhibit A-03 is a copy of the record obtained through Pacer from Cause Number 19-5052, *North American Butterfly Association v. Nielsen*, pending in the United States Court of Appeal for the District of Columbia Circuit.

Attached hereto as Exhibit A-04 is a true and correct copy of an October 11, 2018 news release printed by myself from the web page of the Department of Homeland Security titled "DHS Issues Waiver to Expedite Border Construction Project in Hidalgo County, Texas."

Attached hereto as Exhibit A-05 is a true and correct of DHS Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended as published in the Federal Register, FR Doc. 2018-22063.

Attached hereto as Exhibit A-06 is a true and correct copy of an article from The Monitor published on December 30, 2019 titled, "A Look at the effort to build a border Wall in the RGV."

Attached hereto as Exhibit A-07 is a true and correct copy of an article I copied from the The New York Post website dated April 18, 2019 titled "Meet the American fighting at 'ground zero' on the border crisis."

Attached hereto as Exhibit A-08 is a true and correct copy of an article I copied from CBS Channel 4, Valley Central's website dated August 14, 2019, titled "Border Patrol agents recover bodies of four migrants in RGV."

Further affiant sayeth not.

**MARK COURTOIS**

SWORN AND SUBSCRIBED before me on this 20th day of January, 2020.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

Michele Medina

(Printed Name of Notary)

My Commission Expires: 2/7/22

MICHÈLE ANGÉLIC MEDINA
Notary Public, State of Texas
Comm. Expires 02-07-2022
Notary ID 131440888

EXHIBIT A-01

TO

DECLARATION OF MARK J. COURTOIS

EXHIBIT A-01

 

Search   |   How it works ⌄    Start a GoFundMe    **gofundme**    Sign in    **Share**    **Donate**

# Defend the National Butterfly Center, Again

See all



Marianna Trevino is organizing this fundraiser on behalf of North American Butterfly Association, Inc.. ✅
Donations are 100% tax deductible.

---

Created December 9, 2019

🏷️ Animals & Pets

---

Dear Lovers of Butterflies & Freedom,
We need your help—again—to fight a new enemy threatening the National Butterfly Center . This time, the villain is not the Trump Administration (against whom we filed suit  in December 2017), but Brian Kolfage and his private citizens' campaign, We Build the Wall, Inc . (WBTW), along with Fisher Industries . Together, they are building what they describe as a "water wall" on the banks of the Rio Grande River.

In early November, WBTW and Fisher arrived on a neighboring property in Mission, Texas, where they

EXHIBIT A-01

are building an unpermitted, freestanding border wall 3 miles long in the floodplain, in violation of international treaty.  This project will obstruct and divert water flow in flood events to nearby properties and cause irreparable damage to the Rio Grande delta and the National Butterfly Center.

Our only option to stop this destructive project and preserve the National Butterfly Center against these impacts and potential land loss, was to file suit against the landowner, Kolfage, WBTW and Fisher —but we will need your support to see this through.

On December 3, we obtained a Temporary Restraining Order in state district court ordering the defendants to cease all construction activity; however, construction has continued in violation of this order .



Foreman Mike with a huge announcement just now: WE ARE GETTING IT BUILT! Border agents said "anyone trying to stop us is probably benefiting from the cartels".

@TrumpStudents @DeplorableChoir @fleccas @FogCityMidge @DailyMail @JackPosobiec @RyanAFournier @KatTimpf



1:09  |  12.2K views

Although it is less than one year old, WBTW has already collected more than $23 million for border wall construction. The organization has also come under criminal investigation  by the State of Florida, where it was formed by Kolfage, who has a history of profiting from fake and conspiratorial websites .

In order to boost fundraising, Kolfage has accused the National Butterfly Center and its executive

director, Marianna Trevino Wright, of being involved in human trafficking, drug smuggling and the human sex trade. His false and defamatory statements are fueling dangerous sentiment and inflaming public opinion toward our organization and our director.



The National Butterfly Center is lean, green project of the nonprofit North American Butterfly Association. Unlike our adversaries, we are not sitting on a war chest worth millions to fight them in what will most certainly become an expensive court battle. For this reason, we humbly request that you contribute any amount to this effort to help us fight this wall and fulfill our conservation mission.

Just so you know who we're up against, the WBTW advisory board is composed of proxies for President Trump. The board includes Steve Bannon, former White House Chief Strategist and former executive chairman of Breitbart News; Kris Kobach, Republican candidate from Kansas for U.S. Senate; Erik Prince, founder of military service contractor Blackwater USA and brother of U.S. Secretary of Education Betsy DeVos: and David Alexander Clarke Jr., former sheriff of Milwaukee County, Wisconsin, vocal critic of the Black Lives Matter movement, and former spokesman for the super PAC America First

Action.



The National Butterfly Center is a 100-acre, native plant botanical garden that anchors a 2,000-acre section of the Lower Rio Grande Valley Wildlife Conservation Corridor, a critical habitat preservation project at the biologically-diverse and vibrant, but threatened, crossroads of the United States and Mexico. This unique region encompasses no fewer than 11 different types of habitat, from tidal wetlands to riparian forest, brushland scrub to prairie savanna, and is home to more than 1,200 different species of plants, 500 species of birds, 200 vertebrate species, roughly 300 species of butterflies and over 90 species of dragonflies!

In addition, the National Butterfly Center has been named one of TIME for Kids World's Coolest Places of 2019 , which recognizes 50 global destinations that provide enriching, educational, and innovative experiences—and that kids really like!

Join Us at the Texas Butterfly Festival



The National Butterfly Center is committed to
'Growing Connections' between people, plants, and
the winged wonders that pollinate and propagate all
that grows around us. We do this through
educational and environmental initiatives that
cultivate meaningful understanding of the processes
that create sustainable ecosystems. The Center is
open to the public, for visitors and members, seven
days/week. To learn more about the National
Butterfly Center, and how you can join us, visit
www.nationalbutterflycenter.org .

## Updates (4)

● **JANUARY 3, 2020**  by Marianna Trevino, Organizer

UPDATE: Court today went much longer
than expected. The judge rolled the IBWC's
injunction hearing and ours into ONE. The

government presented expert testimony, at
which point the judge's bias toward border
wall and private, for-profit business was on
full display. Before even hearing from us--
not a word from our expert in testimony--he
met with the attorneys in private and said
he did not think the plaintiffs would be able
to make their cases; so, "why not" just let
Fisher proceed and build their "water wall"
on the banks of the Rio Grande River. Our
attorney protested, then the Assistant US
Attoneys (who are loathe to speak up to a
federal judge) joined in and our expert was
heard.

heard.

Our expert, who was hired by the US Army Corps of Engineers to beta-test and debug this software for flood modeling, testified that the model Fisher, Neuhaus and We Build the Wall, Inc, has presented to the court is "not calibrated," has no accounting for "sediment distribution" and does not properly factor debris. So, the model they presented to the court. the IBWC and us is not true, complete or accurate where real flood events are concerned.

As a result, Fisher must wait another week (at least) for their "water wall" construction, until they have their expert appear to testify. Of course, they are doing this when they hope the government's experts and ours will not appear.

We have another court hearing set for Thursday, Jan. 9.

THANK YOU to all who are contrubuting to our defense. It's expensive and we may have to fly our expert in from Davis, CA, again

next week!

Please SHARE this campaign!

Every dollar counts.
We are grateful for your continued support,
Marianna

---

● **DECEMBER 20, 2019**   by Marianna Trevino, Organizer

ALERT: We do not want to be the source of misinformation, so we wish to correct the last update. According to We Build the Wall and

Fisher Industries comments to the Associated Press and on Twitter, they are purchasing their steel from Nucor… Read more

---

● **DECEMBER 20, 2019** by Marianna Trevino, Organizer

UPDATE: Yesterday, we had our first hearing in federal court, per Neuhaus & Sons LLC's request to have it moved there. The judge had lots of questions ranging from why did we have an interest in border wall construction on the river (where… Read more

**$12,650** raised of $100,000 goal

### Donate now

**Share**

**Show older**

**Fundraiser Stats**

| **245** donors | **679** shares | **57** followers |

## Organizer

Marianna Trevino
Organizer
Mission, TX

→

North American Butterfly Association, Inc. ✓
Registered nonprofit
Donations are 100% tax deductible.
Learn more


Anonymous
$25 • 16 hrs


Judith Stanley
$25 • 1 d


Anonymous
$10 • 1 d

Sherri Papirnik
$25 • 1 d


Anonymous
$25 • 1 d

See all

Contact

## Comments (21)



### Sam Gassel donated **$25**

The next election will be the most consequential of our Lifetime - and maybe fora generation. Please take part, become and advocate, and volunteer to defend all that is good in the world.

3 d



### Rachel Leip donated **$5**

This "water wall" is an environmental crime, both domestically and internationally. It must be stopped immediately.

3 d



### Bill Johnson donated **$50**

Keep up the good work! Fisher Industries clearly does not care about the impact their project would have but building that type of barrier in a floodplain would inevitably harm the river and neighboring properties.

3 d



### Becky Mix donated **$25**

I cannot express the terror I feel when I read about the events threatening the Butterfly Center. It reads like a horror story where

aliens invade and destroy the local flora &
fauna. How can this be happening to the
Center and ultimately many... Read more

3 d



Barbara Holst donated **$10**

This is criminal and needs to be stopped.

7 d



Mary Wendland donated **$25**

Border walls are counterproductive. They
don't stop problems. They only create
problems. They are ridiculously expensive.
They destroy the environment!

8 d



Veronica Varela donated **$50**

I traveled from Alaska specifically to visit
the Center and go birdwatching there.

Great place! The experience was good for
the soul. It breaks my heart thinking the
terrible wall could destroy that special place
and the animals that pass through...
Read more

15 d



Michal Mudd donated **$50**

What's being done down there to the center
is outrageous and criminal!

16 d

---



Faith and Gary Reyes donated **$100**

We are lovers of butterflies - citizens of the world!

17 d

---



Irene. Frantz donated **$100**

We have visited the butterfly center numerous times because it is a beautiful and important place. My heart is breaking over what is happening.

17 d

**Show more**

 Report fundraiser



**#1 FUNDRAISING PLATFORM**

People have raised more money on GoFundMe than anywhere else.

Learn more



**GOFUNDME GUARANTEE**

In the rare case that something isn't right, we will refund your donation.

Learn more



**EXPERT ADVICE, 24/7**

Contact us with your questions and we'll answer, day or night.

Learn more

---

**FUNDRAISE FOR**     **LEARN MORE**     **RESOURCES**



## Choose your language

English (｜ ⌄)

Medical

Emergency

Memorial

Education

Charity

Nonprofit organization

How GoFundMe works

Why GoFundMe

Common questions

Success stories

Supported countries

Help center

Blog

GoFundMe Stories

Press center

Careers

About

---

© 2010-2020 GoFundMe

Terms          Privacy          Legal    

EXHIBIT A-02

TO

DECLARATION OF MARK J. COURTOIS

Case 7:19-cv-00411    Document 29-1    Filed on 01/20/20 in TXSD    Page 17 of 62    Exhibit A-02

🐦 **Home**    ⚡ **Moments**      🔍 Search Twitter      Have an account? **Log in** ▾



| | | | |
|---|---|---|---|
| Tweets **2,293** | Following **1,385** | Followers **5,740** | Likes **731** |

Follow

## National Butterfly
@NatButterflies

The National Butterfly Center, a project of the North American Butterfly Association, a nonprofit dedicated to the conservation and study of wild butterflies.

📍 Mission, Texas

🔗 NationalButterflyCenter.org

🗓 Joined November 2012

🖼 **111 Photos and videos**

  
  

**Tweets**     **Tweets & replies**     **Media**

---

🔁 National Butterfly Retweeted

 **Texas Civil Rights Project** ✔ @TXCivilRights · 20h    ⌄
The Anzaldua family and our friends at @NatButterflies are correct: border wall construction will lead to flooding that will damage properties, endanger people and wildlife, and hurt the Rio Grande Valley's economy. One more reason we say #NoBorderWall.

**Erosion, flooding concerns raised over privately funded border wall i...**
A Rio Grande Valley resident said he's worried the impact the We Build the Wall project will have on the land his family has owned for generations will
ksat.com

💬 1     🔁 16     15

---

 **National Butterfly** @NatButterflies · Jan 4    ⌄
It's been a while since we had a new blog post regarding 'Lessons & Reflections from the National Butterfly Center, by our director, Marianna, but they are always worth the wait. Click to read and enjoy! nationalbutterflycenter.org/nbc-multi-medi...

💬 1     🔁 7     16

---

 **National Butterfly** @NatButterflies · Jan 3    ⌄
Fisher must wait at least another week for their "water wall" construction. Today, our expert (who help the US government develop the software used for flood modeling) poked holes in their model which... gofundme.com/manage/defend-...

🐦 **Home**          ⚡ **Moments**

Search Twitter 🔍          Have an account? **Log in** ▾

**National Butterfly** @NatButterflies · 31 Dec 2019          ⌄
NECTAR: 2019: What a year it has been! - mailchi.mp/nationalbutter...
mailchi.mp/nationalbutter...

💬          ⟲ **2**          ♡ **7**

---

**National Butterfly** @NatButterflies · 29 Dec 2019          ⌄
NOTE: La Parida is west of us on the banks of the river, in our 2,000 acre section of
the Lower Rio Grande Valley Wildlife Conservation Corridor. From the article:
"Even on...

**US heads to court in effort to seize private land for Texas border wall**
HOUSTON — Three years into Donald Trump's presidency, the U.S.
government is ramping up its efforts to seize private land in Texas to build a
fox6now.com

💬 **5**          ⟲ **26**          ♡ **35**

---

**National Butterfly** @NatButterflies · 26 Dec 2019          ⌄
We are fighting destructive border walls every way we can. Many thanks to
Earthjustice for stepping up to help us on this front!

**Earthjustice and National Butterfly Center Urge U.S. Army Corps of E...**
This morning, the environmental law group Earthjustice, on behalf of the
National Butterfly Center™, released a letter to U.S. Army Corps of Engi...
earthjustice.org

💬 **8**          ⟲ **40**          ♡ **77**

---

**National Butterfly** @NatButterflies · 21 Dec 2019          ⌄
Both Trump's border wall and the private one Fisher Industries is building nearby
include harmful all night-bright lighting. This is just one of the reasons we're
fighting these initiatives...

🐦 **Home**    ⚡ **Moments**        Search Twitter 🔍        Have an account? **Log in ▾**

**Light pollution is key 'bringer of insect apocalypse'**
Exclusive: scientists say bug deaths can be cut by switching off unnecessary lights
theguardian.com

💬 5        ⟲ 39              51

**National Butterfly** @NatButterflies · 20 Dec 2019        ⌄
A little light bedtime reading on border walls and the Rio Grande River. THE FLOOD NEXT TIME, by @gus_bova

**The Flood Next Time**
In the floodplain of the Rio Grande, Trump's wall threatens to inundate communities on both sides of the border.
texasobserver.org

💬 4        ⟲ 20              25

**National Butterfly** @NatButterflies · 19 Dec 2019        ⌄
ALERT:  The Rose-throated Becard is still being seen at the National Butterfly Center

💬 2        ⟲ 5              14

**National Butterfly** @NatButterflies · 14 Dec 2019        ⌄
What a fantastic morning! More than 115 Girl Scouts attended Spike's birthday party and earned badges related to caring for pets and the planet. We had great fun and learned a lot on this beautiful, sunny day outdoors!
facebook.com/20124878324218...

💬 1        ⟲ 4              29

**National Butterfly** @NatButterflies · 14 Dec 2019        ⌄
Another delight in the gardens of the National Butterfly Center! During the holidays, the ornaments on our trees and shrubs are spectacular and alive!
facebook.com/20124878324218...

💬 1        ⟲ 8              26

Case 7:19-cv-00411   Document 29-1   Filed on 01/20/20 in TXSD   Page 20 of 62



TIME TO MAKE THEIR PHONES RING! As we've long said, BOTH parties have used border wall funding as a bargaining chip for their own priorities, throwing the borderlands under the bus in exchange for benefits for...
facebook.com/natbutterflies...

1        13        15

**National Butterfly** @NatButterflies · 12 Dec 2019
From the federal hearing, today: "private border wall project irreparably damaged the riverbank."

5        17        23

**National Butterfly** @NatButterflies · 12 Dec 2019
The lawlessness continues...Please help us in this new fight to defend the National Butterfly Center against We Build the Wall, Inc. and their destructive, unpermitted project near us that will alter the... facebook.com/natbutterflies...

4        24        29

**National Butterfly** @NatButterflies · 12 Dec 2019
...

2        13        10

**National Butterfly** @NatButterflies · 11 Dec 2019
...



🐦 **Home**　⚡ **Moments**

Search Twitter 🔍　　Have an account? **Log in ▾**

💬 4　⟲ 26　　27

**National Butterfly** @NatButterflies · 9 Dec 2019　⌄
Please donate to DEFEND THE NBC via Facebook or here:
nationalbutterflycenter.org/support-nbc/do…. Our first court date is set for Dec….

💬 8　⟲ 29　　25

**National Butterfly** @NatButterflies · 8 Dec 2019　⌄
We Build the Wall, has raised $25 million to, they say, build border…

💬 20　⟲ 18　　38

**National Butterfly** @NatButterflies · 8 Dec 2019　⌄
WHAT A WEEK! On Thursday, our attorneys argued our federal suit against the
Trump administration the Court of Appeals for the D.C. Circuit AND we made…

🐦 Home     ⚡ Moments          Search Twitter        Have an account? **Log in** ▾



💬 5      ⟲ 23      55

**National Butterfly** @NatButterflies · 7 Dec 2019     ⌄
In defiance of state and federal court orders, the private "border wall" construction by We Build the Wall, Inc., Fisher Industries and Neuhaus & Sons LLC continues.

💬 140      ⟲ 57      99



**Want to take advantage of all the new Twitter features?**

It's simple – just log in.

Log in

**Sign up**

 **Home**     **Moments**

Search Twitter

Have an account? **Log in** ▾

You may also like

Refresh

 **Center for B...**
@CenterFor...

**Mark Consu...**
@MarkCons...

 **Rogue WH ...**
@RogueSNR...

 **#RandomW...**
@coleyworld

**AlterNet** ✔
@AlterNet

---

**Worldwide trends**

**#SiestaKey** 
Don't Miss the Return of
Siesta Key Tonight at
8/7c on MTV.
▣ Promoted by MTV

**Giants**
87.1K Tweets

**Joe Judge**
23.1K Tweets

**#7isComing**
BTS marks comeback date
with new album

**Rhule**
40.2K Tweets

**Puerto Rico**
180K Tweets

**#BTSIsComing**
BTS marks comeback date
with new album

**#MAP_OF_THE_SOUL_7**
BTS marks comeback date
with new album

**Baylor**
22.4K Tweets

**#TuesdayThoughts**
68.6K Tweets

---

© 2020 Twitter   About
Help Center   Terms
Privacy policy   Cookies
Ads info

EXHIBIT A-03

TO

DECLARATION OF MARK J. COURTOIS

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**NORTH AMERICAN BUTTERFLY ASSOCIATION**,

        Plaintiff-Appellant,

 -against-

**KIRSTJEN M. NIELSEN**, *in her official capacity* as Secretary, United States Department of Homeland Security, **KEVIN M. MCALEENAN**, *in his official capacity* as Commissioner, United States Customs and Border Protection, **CARLA L. PROVOST**, *in her official capacity* as Chief, United States Border Patrol, and **MANUEL PADILLA, JR.**, *in his official capacity* as Chief Patrol Agent, United States Customs & Border Protection Rio Grande Valley Border Patrol Sector,

        Defendant-Appellees.

No. **19-5052**

---

## UNDERLYING DECISION FROM WHICH APPEAL ARISES

Timothy K. Beeken
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
(212) 909-6000

April 8, 2019

*Attorneys for Plaintiff-Appellant*

**Exhibit A-03**

Case 1:17-cv-02651-RJL Document 46 Filed 02/14/19 Page 1 of 1
Case 7:19-cv-00411 Document 29-1 Filed on 01/20/20 in TXSD Page 26 of 62
USCA Case #19-5052    Document #1781785    Filed: 04/08/2019    Page 2 of 17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

FEB 1 4 2019

Clerk, U.S. District and
Bankruptcy Courts

NORTH AMERICAN BUTTERFLY        )
ASSOCIATION,                    )
                                )
         Plaintiff,             )
                                )
    v.                          )        Civil Case No. 17-2651 (RJL)
                                )
KIRSTJEN M. NIELSEN, *et al.*   )
                                )
         Defendants.            )

**ORDER**
(February **14**, 2019) [Dkt. ## 25, 34]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendants' motions to dismiss [Dkt. ## 25, 34] are **GRANTED**,

plaintiff's constitutional claims are **DISMISSED without prejudice**, and plaintiff's

statutory claims are **DISMISSED with prejudice**.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

Case 1:17-cv-02651-RJL Document 45 Filed 02/14/19 Page 1 of 14
Case 7:19-cv-00411 Document 29-1 Filed on 01/20/20 in TXSD Page 27 of 62
USCA Case #19-5052    Document #1781785        Filed: 04/08/2019    Page 3 of 17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**NORTH AMERICAN BUTTERFLY ASSOCIATION,**

        **Plaintiff,**

        **v.**

**KIRSTJEN M. NIELSEN,** *et al.*

        **Defendants.**

FEB 1 4 2019

Clerk, U.S. District and
Bankruptcy Courts

**Civil Case No. 17-2651 (RJL)**

## MEMORANDUM OPINION
(February **14**, 2019) [Dkt. ## 25, 34]

The North American Butterfly Association ("NABA" or "plaintiff"), a non-profit organization devoted to butterflies and butterfly habitat conservation, brought this action against Department of Homeland Security ("DHS") Secretary Kirstjen Nielsen, United States Customs and Border Protection ("CBP") Acting Commissioner Kevin McAleenan, United States Border Patrol ("USBP") Acting Chief Carla Provost, and CBP Rio Grande Valley Sector Chief Patrol Agent Manuel Padilla, Jr., each in their official capacities (collectively, "defendants"). NABA seeks declaratory and injunctive relief based on alleged constitutional and statutory violations arising from defendants' border wall preparation and law enforcement activities at NABA's National Butterfly Center ("Butterfly Center"), which is located near the United States-Mexico border in South Texas. Pending before me are defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

1

Case 1:17-cv-02651-RJL   Document 45   Filed 02/14/19   Page 2 of 14
Case 7:19-cv-00411   Document 29-1   Filed on 01/20/20 in TXSD   Page 28 of 62
USCA Case #19-5052   Document #1781785   Filed: 04/08/2019   Page 4 of 17

Upon consideration of the pleadings and the relevant law, and for the reasons stated below, defendants' motions to dismiss are **GRANTED**, and this case is **DISMISSED**.

## BACKGROUND

On January 25, 2017, President Donald Trump issued Executive Order No. 13767, directing the DHS Secretary to "take all appropriate steps to immediately plan, design, and construct a physical wall along the southern border" with Mexico. 82 Fed. Reg. 8793, 8794. On February 20, 2017, former DHS Secretary John Kelly issued a memorandum implementing the Executive Order. *See* Mem. Re: Implementing the President's Border Security and Immigration Enforcement Improvements Policies (February 20, 2017) [Dkt. # 25-2, Att. E]. Secretary Kelly's memorandum directed CBP to "immediately begin planning, design, construction, and maintenance of a wall, including the attendant lighting, technology (including sensors), as well as patrol and access roads, along the land border with Mexico in accordance with existing law." *Id.* at 5. Neither the Executive Order, nor the implementing memorandum, identifies any particular location or specific infrastructure projects for the planning or construction of the physical barrier wall.

NABA is a non-profit organization dedicated to conserving butterflies and butterfly habitats. Am. Compl. ¶ 15. NABA owns and operates the Butterfly Center, a 100-acre wildlife center and botanical garden located in South Texas abutting the Rio Grande river. *Id.* at ¶¶ 46–47. The Butterfly Center is home to a number of wildlife species listed as threatened or endangered under federal law. *Id.* at ¶ 49. The Butterfly Center is also situated in the Rio Grande Valley Border Patrol Sector ("RGV Sector"), a USBP designation for the 17,000 square-mile geographical patrol area encompassing the Center.

2

Case 7:19-cv-00451-RJ Document 29-1 Filed 01/20/20 in TXSD Page 29 of 62
Case 1:17-cv-02651-RJL Document 45 Filed 02/14/19 Page 3 of 14
USCA Case #19-5052    Document #1781785    Filed: 04/08/2019    Page 5 of 17

*Id.* at ¶ 19. Although not expressly alleged, plaintiff does not appear to dispute that the Butterfly Center is located within twenty-five miles of the southern border with Mexico. *See id.* at ¶ 15; Pl.'s Opp'n at 2, 22 [Dkt. # 30].

NABA alleges that on July 20, 2017, the Butterfly Center's executive director identified a work crew on Center property using heavy equipment to "cut down trees, mow brush, and widen a private road that runs" through the Center. Am. Compl. ¶ 53. The executive director also noticed "surveyor flags" elsewhere on the property. *Id.* at ¶ 54. The executive director contacted CBP, which confirmed that the agency was responsible for the work crew, had authority for the activity, and would provide further clarity about the work. *Id.* at ¶ 55. On August 1, 2017, the Chief Patrol Agent for the RGV Sector and two CBP agents visited the Butterfly Center and showed the executive director "a draft proposal for the border wall, including a segment through the Butterfly Center." *Id.* at ¶ 56. The Chief Patrol Agent also referred to "sensors" that had been placed in undisclosed locations on Center property. *Id.* at ¶ 59. Plaintiff alleges that since the August 1, 2017 meeting, CBP officials have, on one occasion, "followed and temporarily detained" the executive director and a reporter and have "regularly station[ed]" themselves on Center property rather than patrolling. *Id.* at ¶¶ 61–62.

Plaintiff filed a complaint for declaratory and injunctive relief on December 11, 2017, *see* Compl. [Dkt. # 1], which it amended on March 28, 2018, *see* Am. Compl. [Dkt. # 19]. Based on the foregoing factual allegations, NABA claims that defendants have failed to comply with their statutory obligations under the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA") and have violated NABA's

3

Case 7:19-cv-00411 Document 29-1 Filed on 01/20/20 in TXSD Page 30 of 62
Case 1:17-cv-02651-RJL Document 45 Filed 02/14/19 Page 4 of 14
USCA Case #19-5052   Document #1781785      Filed: 04/08/2019   Page 6 of 17

Fourth and Fifth Amendment rights. *Id.* at ¶¶ 63–89. Defendants moved to dismiss the Amended Complaint on May 25, 2018, arguing that NABA's statutory and constitutional claims are unripe and/or otherwise defective. *See* [Dkt. # 25].

On October 12, 2018, defendants filed a notice informing the Court of a determination by DHS Secretary Nielsen pursuant to § 102 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. § 1103 note, which authorizes the Secretary to "waive all legal requirements"—including the ESA and NEPA—that the Secretary "determines necessary to ensure expeditious construction of" physical barriers and roads along the United States-Mexico border.[1]  Section 102 also deprives federal courts of jurisdiction to review any non-constitutional "causes or claims" that "aris[e] from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to" the Secretary's waiver authority. IIRIRA § 102(c)(2)(A).

The Secretary invoked her waiver authority on October 4, 2018, applying it to certain areas within the RGV Sector that include NABA's Butterfly Center property. *See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 83 Fed. Reg. 51472, 51473 (Oct. 11, 2018) ("Waiver Determination"). The Secretary "waive[d] in their entirety," *inter alia*, NEPA, the ESA, and the Administrative Procedure Act ("APA") "with respect to the construction of roads and physical barriers (including, but not limited to, accessing the project area, creating and using staging areas, the conduct of earthwork, excavation, fill, and site

---

[1] References to § 102 as currently constituted are cited herein as "IIRIRA § 102."

4

Case 7:19-cv-00211-RJL Document 29-1 Filed 02/14/19 Page 5 of 14
Case 1:17-cv-02651-RJL Document 45 Filed 04/08/19 Page 7 of 17
USCA Case #19-5052    Document #1781785      Filed: 04/08/2019    Page 31 of 62

preparation, and installation and upkeep of physical barriers, roads, supporting elements, drainage, erosion controls, safety features, lighting, cameras, and sensors) in the project area." *Id.* at 51473–74. Accordingly, defendants filed a supplemental motion to dismiss contending that the Waiver Determination extinguishes plaintiff's NEPA and ESA claims by depriving this Court of subject matter jurisdiction over them. *See* [Dkt. # 34].

## LEGAL STANDARD

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Bank of America, N.A. v. FDIC*, 908 F.Supp.2d 60, 76 (D.D.C. 2012). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). In considering a 12(b)(1) motion to dismiss, a court need not limit itself to the complaint, but rather "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Bank of America, N.A. v. FDIC*, 908 F.Supp.2d 60, 76 (D.D.C. 2012) (quotation marks omitted).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

5

Case 1:17-cv-02651-RJL Document 45 Filed 02/14/19 Page 6 of 14
Case 7:19-cv-00411 Document 29-1 Filed on 01/20/20 in TXSD Page 32 of 62
USCA Case #19-5052     Document #1781785     Filed: 04/08/2019     Page 8 of 17

marks omitted). A claim is facially plausible when the complaint allegations allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In resolving a Rule 12(b)(6) motion, "[t]he [C]ourt assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor[.]" *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

## ANALYSIS

### I.     Constitutional Claims

In its Amended Complaint, NABA asserts claims under the Fourth and Fifth Amendments. I will address these in turn.[2]

#### a. Fourth Amendment

NABA contends that defendants have violated and will continue to violate the Fourth Amendment by entering Butterfly Center property without consent or warrant. Am.

---

[2] The jurisdictional impact of the Secretary's October 2018 Waiver Determination is discussed in detail *infra*. Nevertheless, it bears mentioning at this point that NABA's constitutional claims do not appear to "aris[e] from" the Secretary's waiver authority such that § 102(c)(2)(A)'s jurisdictional carve-out would apply. However, defendants do not argue—and the Waiver Determination does not indicate—that the Secretary's waiver of "all legal requirements" relating to barrier and road construction extends beyond the enumerated statutory requirements to extinguish constitutional claims arising from those activities. I will assume that the courthouse doors remain open to such claims to avoid the "serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (internal quotation marks omitted); *see also American Coalition for Competitive Trade v. Clinton*, 128 F.3d 761, 765 (1997) ("To be sure, a statute that totally precluded judicial review for constitutional claims would clearly raise serious due process concerns.").

Compl. ¶¶ 85–89. Unfortunately for plaintiff, the Fourth Amendment offers little refuge for unenclosed land near one of the country's external borders. The Amended Complaint is clear that the Butterfly Center consists of 100 acres of open land accessible to the visiting public, *id.* at ¶¶ 46, and no factual allegations suggest that defendants entered or searched without consent any physical structures on the Center's property. Thus, while plaintiff perhaps could seek damages under a trespass theory,[3] for constitutional purposes the property at issue amounts to an "open field," which is "unprotected by the Fourth Amendment, even when privately owned." *United States v. Johnson*, 561 F.2d 832, 858 n.13 (D.C. Cir. 1977) (Bazelon, C.J., dissenting); *see also United States v. Alexander*, 888 F.3d 628, 631 (2d Cir. 2018) ("that portion of private property that extends outside a home's curtilage—what the caselaw terms an 'open field'—is beyond the purview of the Fourth Amendment, and can be warrantlessly and suspicionlessly searched without constitutional impediment"). Moreover, the Butterfly Center's proximity to the United States' border with Mexico confirms that NABA has not stated a Fourth Amendment claim. It is well established that "searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border."

---

[3] Such a trespass claim would have to be brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2679(b)(1), before it could be brought in this Court. *See* 28 U.S.C. §§ 2401(b), 2675; *McNeil v. United States*, 508 U.S. 106, 112 (1993); *Moher v. United States*, 875 F.Supp.2d 739, 751 (W.D. Mich. 2012) (considering tort claims based on warrantless entry of border patrol agents on private timber land after plaintiff had exhausted FTCA administrative remedy).

7

*United States v. Gurr*, 471 F.3d 144, 148 (D.C. Cir. 2006) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)); *see* 8 U.S.C. § 1357(a) (immigration officers "shall have the power without warrant . . . within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States").

As such, the confluence of the Butterfly Center's open field status and defendants' constitutional and statutory authority at the border compels dismissal of NABA's Fourth Amendment claim under Rule 12(b)(6). *See Moher v. United States*, 875 F.Supp.2d 739, 773–89 (W.D. Mich. 2012) (dismissing Fourth Amendment claim based on border patrol officers' warrantless entry on private timber land because land was "open field" under Fourth Amendment and, in passing 8 U.S.C. § 1357(a), Congress "reasonably determined that warrantless searches in open fields on private land located within 25 miles of the external borders of the United States are necessary to effectively carry out and enforce the federal regulatory scheme" governing alien immigration); *Bourgeois v. Peters*, 387 F.3d 1303, 1314–15 (11th Cir. 2004) ("[s]ituations in which such expectations [of privacy] are reduced include . . . border searches, and searches of open fields" (footnotes omitted)).

### b. Fifth Amendment

The Amended Complaint asserts that defendants have deprived NABA of its property in violation of the Fifth Amendment's Due Process Clause. *See* Am. Compl. ¶¶ 34–39, 80–83. This claim also fails.

Insofar as NABA's claim is predicated on an alleged failure to comply with IIRIRA's property condemnation provisions, that preemptive challenge is not ripe. *See*

8

Case 1:17-cv-02651-RJL Document 45 Filed 02/14/19 Page 9 of 14
USCA Case #19-5052    Document #1781785      Filed: 04/08/2019    Page 11 of 17
Case 7:19-cv-00411-2 Document 29-1 Filed on 05/20/20 in TXSD Page 35 of 62

Am. Compl. ¶ 83 ("Defendants have not sought to acquire an interest in NABA property or followed any of the steps for doing so"); *Texas Border Coal. v. Napolitano*, 614 F.Supp.2d 54, 59–63 (D.D.C. 2009) ("It would . . . thwart congressional will, to allow the plaintiff's members to preemptively challenge an anticipated condemnation when the Department's decision to pursue this course has not yet been rendered."). Similarly unripe is plaintiff's claim that "[p]roposed border wall construction" amounts to a constitutional deprivation. Am. Compl. ¶ 82; *see, e.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks omitted)). And finally, to the extent that NABA's allegations can be read to support an authorized-but-uncompensated taking claim, that claim too is premature. "[A] takings lawsuit is premature if it is brought before plaintiffs have sought compensation in the form of damages." *Firearms Import/Export Roundtable Trade Grp. v. Jones*, 854 F.Supp.2d 1, 20–21 (D.D.C. 2012) (dismissing takings claim for injunctive relief where plaintiffs failed to first seek damages under the Tucker Act); *see also Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194–95 (1985); *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 401 (D.C. Cir. 1997).

Accordingly, plaintiff's Fifth Amendment claim, as alleged in the Amended Complaint, also must be dismissed. *See, e.g.*, *Sierra Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011) (certain justiciability questions should be addressed under Rule 12(b)(6)); *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F.Supp.3d 319, 331 n.9 (D.D.C.

9

Case 1:17-cv-02651-RJL Document 45 Filed 02/14/19 Page 10 of 14
Case 7:19-cv-00411 Document 29-1 Filed on 01/29/2019 in TXSD Page 36 of 62
USCA Case #19-5052    Document #1781785      Filed: 04/08/2019    Page 12 of 17

2016) (matters of prudential ripeness may be properly resolved under Rule 12(b)(6), rather than Rule 12(b)(1)), *aff'd*, 851 F.3d 1 (D.C. Cir. 2017).

## II.    Statutory Claims

It is undisputed that the DHS Secretary's October 2018 Waiver Determination, if validly exercised, deprives the Court of jurisdiction to hear plaintiff's NEPA and ESA claims.    "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (citing U.S. Const. art. III, § 1). And "when it comes to jurisdiction, the Congress giveth and the Congress taketh away." *In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015); *see* 5 U.S.C. § 701(a)(1) (APA does not apply where "statute[] preclude[s] judicial review"); *Robbins v. Reagan*, 780 F.2d 37, 42 (D.C. Cir. 1985) (APA and federal question jurisdiction are "subject . . . to preclusion-of-review statutes created or retained by Congress").    In the case of IIRIRA, Congress expressly granted to the Secretary the authority to "waive all legal requirements" that, in the "Secretary's sole discretion, [are] necessary to ensure expeditious construction of the barriers and roads" described in the statute. IIRIRA § 102(c)(1). As such, "a valid waiver of the relevant environmental laws under section 102(c) is an affirmative defense to all [of plaintiff's] environmental claims." *In re Border Infrastructure Environmental Litig.*, -- F.3d --, 2019 WL 509813, at *5 (9th Cir. Feb. 11, 2019).

NABA does not argue that the geographic scope of the Secretary's Waiver Determination fails to encompass the Butterfly Center. *See* Waiver Determination, 83 Fed. Reg. at 51473 (defining covered area). Thus, the waiver extinguishes plaintiff's NEPA and ESA claims, as those statutes (and the APA) create "legal requirements" that no longer

10

apply to actions related to "the construction of roads and physical barriers"—e.g., excavation, site preparation, installation and upkeep of barriers, roads, and sensors—in the covered area. *Id.* at 51473–74; *see In re Border Infrastructure Environmental Litig.*, -- F.3d --, 2019 WL 509813, at \*9 ("The Secretary has waived the legal requirements that [plaintiffs] allege DHS violated."). It is of no moment that the waiver was issued after the commencement of this action. *See In re Border Infrastructure Environmental Litig.*, 2019 WL 509813, at \*5 n.8 (rejecting argument that previously effective statutory requirements survive waiver because "the waiver provision says nothing about *when* the agency must invoke its authority," and thus no "relief could be granted once DHS issued the waivers").

IIRIRA also expressly precludes federal court jurisdiction to review any non-constitutional "causes or claims" that "aris[e] from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to" the Secretary's waiver authority. IIRIRA § 102(c)(2)(A); *Save Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58, 60 (D.D.C. 2008) ("The only claims permitted under the [IIRIRA] waiver provision are those 'alleging a violation of the Constitution.'" (quoting IIRIRA § 102(c)(2)(A)). In other words, IIRIRA not only permits the Secretary to waive NEPA and the ESA, but it also precludes any non-constitutional challenge to the waiver itself.

However, IIRIRA's preclusion-of-review provision does not end the matter. NABA contends that I may review whether the Secretary's waiver was *ultra vires* for failure to consult with other stakeholders, as required under IIRIRA § 102(b)(1)(C). While defendants respond that such non-statutory review is also foreclosed, it is well established in our Circuit that "even where a statute precludes judicial review, 'judicial review is

11

Case 1:17-cv-02651-RJL   Document 29-1   Filed 02/14/19   Page 12 of 14
Case 7:19-cv-00411   Document #1781785   Filed: 04/08/2019   Page 38 of 62
USCA Case #19-5052   Document #1781785      Filed: 04/08/2019   Page 14 of 17

available when an agency acts *ultra vires*.'" *Sky Television, LLC v. F.C.C.*, 589 Fed.Appx. 541, 543 (D.C. Cir. 2014) (quoting *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)). Not surprisingly, however, non-statutory review of agency action is "of extremely limited scope." *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see also Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 190 (D.C. Cir. 2006). "If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective." *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004). The Court must only "determine whether the challenged agency action is of the sort shielded from review." *Id.*

Here, the Secretary's waiver "is of the sort shielded from review" under IIRIRA, and plaintiff's *ultra vires* argument is predicated on an alleged procedural defect. *See id.* The consultation provision on which NABA relies provides that "[i]n carrying out this section, the Secretary of Homeland Security shall consult with the Secretary of the Interior, the Secretary of Agriculture, States, local governments, Indian tribes, and property owners in the United States to minimize the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which such fencing is to be constructed." IIRIRA § 102(b)(1)(C). Although the statutory language is phrased in mandatory terms, the provision "does not provide any specific limitation or guidance concerning when or how consultation is to occur except expressly stating who shall be consulted." *In re Border Infrastructure Environmental Litig.*, 284 F.Supp.3d 1092, 1126 (S.D. Cal. 2018), *aff'd*, 2019 WL 509813 (9th Cir. Feb. 11, 2019). In other words, IRIRA

12

Case 1:17-cv-02651-RJL   Document 45   Filed 02/14/19   Page 13 of 14
Case 7:19-cv-00411   Document 29-1   Filed on 01/20/20 in TXSD   Page 39 of 62
USCA Case #19-5052   Document #1781785         Filed: 04/08/2019   Page 15 of 17

is silent as to whether the consultation required must occur *prior* to a waiver determination. Moreover, the decision whether to exercise the waiver authority is in the Secretary's "sole discretion." IIRIRA § 102(c)(1). The statute neither requires the Secretary to consult with the stakeholders identified in § 102(b)(1)(C) *before* exercising her waiver authority, nor indicates that the Secretary's waiver power in any way depends on the views of those third parties.

Pre-waiver consultation may be wise policy, but it not a statutory requirement. As such, even assuming the complete absence of consultation here, I cannot conclude that the Secretary's Waiver Determination was plainly in excess of her delegated statutory powers or contradicted a clear statutory mandate. *See In re Border Infrastructure Environmental Litigation*, 284 F.Supp.3d at 1126 (rejecting *ultra vires* argument that Secretary exceeded "delegated powers by approving the waivers or executing construction contracts prior to completing the consultation process" because IIRIRA lacks "a 'clear and mandatory' mandate regarding the timing of consultation"); *Griffith*, 842 F.2d at 493. My jurisdiction therefore does not extend beyond NABA's constitutional claims, and its statutory claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

13

Case 1:17-cv-02651-RJL   Document 45   Filed 02/14/19   Page 14 of 14
Case 7:19-cv-00411   Document 29-1   Filed on 01/20/20 in TXSD   Page 40 of 62
USCA Case #19-5052   Document #1781785   Filed: 04/08/2019   Page 16 of 17

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are hereby **GRANTED**, plaintiff's constitutional claims are **DISMISSED without prejudice**, and plaintiff's statutory claims are **DISMISSED with prejudice**. A separate order consistent with this decision accompanies this Memorandum Opinion.


RICHARD J. LEON
United States District Judge

## CERTIFICATE OF SERVICE

I certify that, on this 8th day of April 2019, the foregoing underlying decision from which appeal arises was served on the below counsel who has appeared for defendant-appellees in this matter by filing it with the Court's electronic filing system, pursuant to Fed. R. App. P. 25(c)(2)(A).

**Jeffrey Steven Beelaert**
U.S. Department of Justice
Environment and Natural Resources Division
Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Email: Jeffrey.Beelaert@usdoj.gov, efile_app.enrd@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2019, New York, NY.

By:     */s/Timothy K. Beeken*

Timothy K. Beeken

EXHIBIT A-04

TO

DECLARATION OF MARK J. COURTOIS

**Exhibit A-04**



Official website of the Department of Homeland Security

**U.S. Department of
Homeland Security**

# DHS Issues Waiver to Expedite Border Construction Project in Hidalgo County, Texas

**Release Date:**  October 11, 2018

WASHINGTON – The Department of Homeland Security has issued a waiver to waive certain laws to ensure the expeditious construction of barriers and roads near the international border in the state of Texas, in the county of Hidalgo.  The waiver was published in the Federal Register on Oct. 11, 2018.

This waiver is pursuant to authority granted to the Secretary of Homeland Security by Congress and covers a variety of environmental, natural resource, and land management laws.  Congress provided the Secretary of Homeland Security with a number of authorities necessary to carry out DHS's border security mission.  One of these authorities is found at section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended ("IIRIRA").  Section 102(a) of IIRIRA provides that the Secretary of Homeland Security shall take such actions as may be necessary to install additional physical barriers and roads in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States.  In section 102(b) of IIRIRA, Congress has called for the installation of additional fencing, barriers, roads, lighting, cameras, and sensors on the southwest border.  Finally, in section 102(c) of IIRIRA, Congress granted to the Secretary of Homeland Security the authority to waive all legal requirements that the Secretary, in Secretary's sole discretion, determines necessary to ensure the expeditious construction of the barriers and roads authorized by section 102 of IIRIRA.

The Department exercised the waiver authority in Section 102 (c) of IIRIRA on five occasions from 2005 to 2008 and on two occasions in 2017.

The geographic scope of this waiver covers an approximate 14-mile long wall project located in the Rio Grande Valley, Texas.  This is within the Border Patrol's Rio Grande Valley

**Exhibit A-04**

Sector (https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/rio-grande-valley-sector-texas) .  The Rio Grande Valley Sector remains an area of high illegal alien activity and marijuana seizures.  In fiscal year 2017, the United States Border Patrol apprehended over 137,000 illegal aliens and seized approximately 260,000 pounds of marijuana and approximately 1,192 pounds of cocaine in the Rio Grande Valley Sector (https://www.cbp.gov /sites/default/files/assets/documents/2017-Dec/USBP%20Stats%20FY2017%20sector%20profile.pdf) .  In order to achieve operational control of the border in the RGV Sector, DHS will implement a border infrastructure project that will focus on an area consisting of multiple segments of border wall that will start near the intersection of Abram road and the IBWC levee and extend eastward to the intersection of Rio Rico Road and the IBWC levee.  The new segments of wall construction will augment the existing wall infrastructure by closing a substantial amount of border gaps along the border in Hidalgo County that were not previously completed during the 2008 wall construction.

While the waiver eliminates DHS' obligation to comply with various laws with respect to covered projects, DHS remains committed to environmental stewardship.  DHS has been coordinating and consulting, and intends to continue doing so, with other federal and state resource  agencies to ensure that impacts to the environment, wildlife, and cultural and historic artifacts are analyzed and minimized, to the extent possible.

The Department of Homeland Security  continues to implement President Trump's Executive Order 13767 - also known as Border Security and Immigration Enforcement Improvements – and continues to take steps to immediately plan, design and construct a physical wall along the southern border, using appropriate materials and technology to most effectively achieve complete operational control of the southern border.

# # #

Topics:  Border Security (/topics/border-security)

Keywords:  Border Security (/keywords/border-security) , Customs and Border Protection (CBP) (/keywords/cbp)

Last Published Date: October 11, 2018

EXHIBIT A-05

TO

DECLARATION OF MARK J. COURTOIS

339: Science Education Partnership Awards (SEPA).

*Date:* November 5–6, 2018.

*Time:* 8:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* Westin Grand, 2350 M Street NW, Washington, DC 20037.

*Contact Person:* Jonathan Arias, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 5170, MSC 7840, Bethesda, MD 20892, 301–435–2406, *ariasj@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; PAR Panel: Pilot Clinical Trials for the Spectrum of Alzheimer's Disease.

*Date:* November 5, 2018.

*Time:* 1:00 p.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, 6701 Rockledge Drive, Bethesda, MD 20892 (Telephone Conference Call).

*Contact Person:* Wind Cowles, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive Room 3172, Bethesda, MD 20892, 301–437–7872, *cowleshw@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Member Conflict: Eukaryotic Parasites and Vectors.

*Date:* November 6–7, 2018.

*Time:* 8:00 a.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Fouad A. El-Zaatari, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 3186, MSC 7808, Bethesda, MD 20892, (301) 435–1149, *elzaataf@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Small Business: Radiation Therapy and Biology.

*Date:* November 6–7, 2018.

*Time:* 8:00 a.m. to 11:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Bo Hong, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 6194, MSC 7804, Bethesda, MD 20892, 301–996–6208, *hongb@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Topics in Bacterial Pathogenesis.

*Date:* November 6, 2018.

*Time:* 8:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* Embassy Suites at the Chevy Chase Pavilion, 4300 Military Road NW, Washington, DC 20015.

*Contact Person:* Richard G. Kostriken, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of

Health, 6701 Rockledge Drive, Room 3192, MSC 7808, Bethesda, MD 20892, 240–519–7808, *kostrikr@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Member Conflict: Topics in Diabetes.

*Date:* November 6, 2018.

*Time:* 2:00 p.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, 6701 Rockledge Drive, Bethesda, MD 20892 (Telephone Conference Call).

*Contact Person:* Liliana N. Berti-Mattera, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, RM 4215, Bethesda, MD 20892, 301–827–7609, *liliana.berti-mattera@nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Member Conflict: Molecular Hematology.

*Date:* November 6, 2018.

*Time:* 12:00 p.m. to 2:30 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, 6701 Rockledge Drive, Bethesda, MD 20892 (Telephone Conference Call).

*Contact Person:* Katherine M. Malinda, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4140, MSC 7814, Bethesda, MD 20892, 301–435–0912, *Katherine_Malinda@csr.nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.306, Comparative Medicine; 93.333, Clinical Research, 93.306, 93.333, 93.337, 93.393–93.396, 93.837–93.844, 93.846–93.878, 93.892, 93.893, National Institutes of Health, HHS)

Dated: October 4, 2018.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2018–22089 Filed 10–10–18; 8:45 am]

**BILLING CODE 4140–01–P**

---

## DEPARTMENT OF HOMELAND SECURITY

### Coast Guard

**[Docket No. USCG–2017–0894]**

**RIN 1625–ZA37**

### Update to the 2016 National Preparedness for Response Exercise Program (PREP) Guidelines; Correction

**AGENCY:** Coast Guard, DHS.

**ACTION:** Notice.

**SUMMARY:** On October 2, 2018, the Coast Guard published a notice of availability of the 2016.1 PREP Guidelines. In the **DATES** section of the Notice of availability, the effective date of the 2016.1 PREP Guidelines is October 1, 2018. However, in Section 1.3, page

1–2, of the 2016.1 PREP Guidelines, the effective date is "60 days after the date of publication in the **Federal Register.**" The Coast Guard has corrected Section 1.3 of the 2016.1 PREP Guidelines to reflect the effective date is "October 1, 2018." A corrected version of the 2016.1 PREP Guidelines has been uploaded to the USCG Homeport site at the following link: *https:// homeport.uscg.mil/missions/incident-management-and-preparedness/ contingency-exercises/port-level-exercises/port-level-exercises-general-information.*

**FOR FURTHER INFORMATION CONTACT:** Mr. Jonathan Smith, Office of Marine Environmental Response Policy, U.S. Coast Guard, 202–372–2675.

**SUPPLEMENTARY INFORMATION:** On page 1–2 of the 2016.1 PREP Guidelines, in Section 1.3, the "Effective Date" is corrected to read: "The 2016.1 PREP Guidelines are effective on October 1, 2018. The PREP Guidelines follow the calendar year (January 1–December 31)." A corrected version of the 2016.1 PREP Guidelines has been uploaded to the Coast Guard Homeport site and can be accessed at *https:// homeport.uscg.mil/missions/incident-management-and-preparedness/ contingency-exercises/port-level-exercises/port-level-exercises-general-information.*

Dated: October 4, 2018.

**Ricardo M. Alonso,**

*Captain, U.S. Coast Guard, Chief, Office of Marine Environmental Response and Policy.*

[FR Doc. 2018–22214 Filed 10–10–18; 8:45 am]

**BILLING CODE 9110–04–P**

---

## DEPARTMENT OF HOMELAND SECURITY

### Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended

**AGENCY:** Office of the Secretary, Department of Homeland Security.

**ACTION:** Notice of determination.

**SUMMARY:** The Secretary of Homeland Security has determined, pursuant to law, that it is necessary to waive certain laws, regulations, and other legal requirements in order to ensure the expeditious construction of barriers and roads in the vicinity of the international land border of the United States in Hidalgo County in the State of Texas.

**DATES:** This determination takes effect on October 11, 2018.

**SUPPLEMENTARY INFORMATION:** Important mission requirements of the Department

**Exhibit A-05**

of Homeland Security ("DHS") include border security and the detection and prevention of illegal entry into the United States. Border security is critical to the nation's national security. Recognizing the critical importance of border security, Congress has mandated DHS to achieve and maintain operational control of the international land border. Secure Fence Act of 2006, Public Law 109–367, § 2, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1701 note). Congress defined "operational control" as the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband. *Id.* Consistent with that mandate from Congress, the President's Executive Order on Border Security and Immigration Enforcement Improvements directed executive departments and agencies to deploy all lawful means to secure the southern border. Executive Order 13767, § 1. In order to achieve that end, the President directed, among other things, that I take immediate steps to prevent all unlawful entries into the United States, including the immediate construction of physical infrastructure to prevent illegal entry. Executive Order 13767, § 4(a).

Congress has provided to the Secretary of Homeland Security a number of authorities necessary to carry out DHS's border security mission. One of those authorities is found at section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended ("IIRIRA"). Public Law 104–208, Div. C, 110 Stat. 3009–546, 3009–554 (Sept. 30, 1996) (8 U.S.C 1103 note), as amended by the REAL ID Act of 2005, Public Law 109–13, Div. B, 119 Stat. 231, 302, 306 (May 11, 2005) (8 U.S.C. 1103 note), as amended by the Secure Fence Act of 2006, Public Law 109–367, § 3, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1103 note), as amended by the Department of Homeland Security Appropriations Act, 2008, Public Law 110–161, Div. E, Title V, § 564, 121 Stat. 2090 (Dec. 26, 2007). In section 102(a) of IIRIRA, Congress provided that the Secretary of Homeland Security shall take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States. In section 102(b) of IIRIRA, Congress mandated the installation of additional fencing, barriers, roads, lighting, cameras, and sensors on the southwest border. Finally, in section 102(c) of IIRIRA, Congress granted to the Secretary of Homeland Security the authority to waive all legal requirements that I, in my sole discretion, determine necessary to ensure the expeditious construction of barriers and roads authorized by section 102 of IIRIRA.

**Determination and Waiver**

*Section 1*

The United States Border Patrol's Rio Grande Valley Sector is an area of high illegal entry. For the last several years, the Rio Grande Valley Sector has seen more apprehensions of illegal aliens than any other sector of the United States Border Patrol ("Border Patrol"). For example, in fiscal year 2017 alone, Border Patrol apprehended over 137,000 illegal aliens. In that same year Border Patrol seized approximately 260,000 pounds of marijuana and approximately 1,200 pounds of cocaine.

In order to satisfy the need for additional border infrastructure in the Rio Grande Valley Sector, DHS will take action to construct barriers and roads. DHS will construct barriers and roads within various segments of the border in the Rio Grande Valley Sector. The segments of the border within which such construction will occur are referred to herein as the "project area" and are more specifically described in Section 2 below.

*Section 2*

I determine that the following areas in the vicinity of the United States border, located in Hidalgo County in the State of Texas, within the United States Border Patrol's Rio Grande Valley Sector, are areas of high illegal entry (the "project area"):

• Starting approximately a quarter mile west of the location where the levee intersects Goodwin/Abram road and running east in proximity to the International Boundary and Water Commission ("IBWC") levee to approximately a quarter mile east of Anzalduas Dam Road, a total distance of approximately eight (8) miles.

• Starting at the eastern boundary of the Santa Ana National Wildlife Refuge and running east in proximity to the IBWC levee approximately two and four-tenths (2.4) miles to the western boundary of the Monterrey Banco Tract of the Lower Rio Grande Valley National Wildlife Refuge.

• Starting at the eastern boundary of the Monterrey Banco Tract of the Lower Rio Grande Valley National Wildlife Refuge and running south and east in proximity to the IBWC levee for approximately one and one-half (1.5) miles.

• Starting at the eastern boundary of the La Coma Tract of the Lower Rio Grande Valley National Wildlife Refuge and running east in proximity to the IBWC levee for approximately two and one-half (2.5) miles.

• Starting where South International Boulevard crosses the IBWC levee and running west and east in proximity to the IBWC levee approximately one-half (0.5) of a mile in both directions.

• Starting approximately one-quarter (0.25) of a mile west of the western boundary of the Mercedes Settling Basin and running northeast in proximity to the IBWC levee approximately two and one-half (2.5) miles.

There is presently an acute and immediate need to construct physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States in the project area. In order to ensure the expeditious construction of the barriers and roads in the project area, I have determined that it is necessary that I exercise the authority that is vested in me by section 102(c) of IIRIRA.

Accordingly, pursuant to section 102(c) of IIRIRA, I hereby waive in their entirety, with respect to the construction of roads and physical barriers (including, but not limited to, accessing the project area, creating and using staging areas, the conduct of earthwork, excavation, fill, and site preparation, and installation and upkeep of physical barriers, roads, supporting elements, drainage, erosion controls, safety features, lighting, cameras, and sensors) in the project area, all of the following statutes, including all federal, state, or other laws, regulations, and legal requirements of, deriving from, or related to the subject of, the following statutes, as amended: The National Environmental Policy Act (Pub. L. 91–190, 83 Stat. 852 (Jan. 1, 1970) (42 U.S.C. 4321 *et seq.*)); the Endangered Species Act (Pub. L. 93–205, 87 Stat. 884 (Dec. 28, 1973) (16 U.S.C. 1531 *et seq.*)); the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act (33 U.S.C. 1251 *et seq.*)); the National Historic Preservation Act (Pub. L. 89–665, 80 Stat. 915 (Oct. 15, 1966), as amended, repealed, or replaced by Public Law 113–287 (Dec. 19, 2014) (formerly codified at 16 U.S.C. 470 *et seq.*, now codified at 54 U.S.C. 100101 note and 54 U.S.C. 300101 *et seq.*)); the Migratory Bird Treaty Act (16 U.S.C. 703 *et seq.*); the Migratory Bird Conservation Act (16 U.S.C. 715 *et seq.*); the Clean Air Act (42 U.S.C. 7401 *et seq.*); the Archeological Resources Protection Act (Pub. L. 96–95 (16 U.S.C.

470aa *et seq.*)); the Paleontological Resources Preservation Act (16 U.S.C. 470aaa *et seq.*); the Federal Cave Resources Protection Act of 1988 (16 U.S.C. 4301 *et seq.*); the Safe Drinking Water Act (42 U.S.C. 300f *et seq.*); the Noise Control Act (42 U.S.C. 4901 *et seq.*); the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (42 U.S.C. 6901 *et seq.*); the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601 *et seq.*); the Archaeological and Historic Preservation Act (Pub. L. 86–523, as amended, repealed, or replaced by Pub. L. 113–287 (Dec. 19, 2014) (formerly codified at 16 U.S.C. 469 *et seq.,* now codified at 54 U.S.C. 312502 *et seq.*)); the Antiquities Act (formerly codified at 16 U.S.C. 431 *et seq.,* now codified 54 U.S.C. 320301 *et seq.*); the Historic Sites, Buildings, and Antiquities Act (formerly codified at 16 U.S.C. 461 *et seq.,* now codified at 54 U.S.C. 3201–320303 & 320101–320106); the Farmland Protection Policy Act (7 U.S.C. 4201 *et seq.*); the Coastal Zone Management Act (Pub. L. 92–583 (16 U.S.C. 1451, *et seq.*)); the Federal Land Policy and Management Act (Pub. L. 94–579 (43 U.S.C. 1701 *et seq.*)); the National Wildlife Refuge System Administration Act (Pub. L. 89–669, 16 U.S.C. 668dd–668ee); National Fish and Wildlife Act of 1956 (Pub. L. 84–1024 (16 U.S.C. 742a, *et seq.*)); the Fish and Wildlife Coordination Act (Pub. L. 73–121 (16 U.S.C. 661 *et seq.*)); the Administrative Procedure Act (5 U.S.C. 551 *et seq.*); the River and Harbors Act of 1899 (33 U.S.C. 403)); the Eagle Protection Act (16 U.S.C. 668 *et seq.*); the Native American Graves Protection and Repatriation Act (25 U.S.C. 3001 *et seq.*); and the American Indian Religious Freedom Act (42 U.S.C. 1996).

This waiver does not revoke or supersede the previous waiver published in the **Federal Register** on April 8, 2008 (73 FR 19077), which shall remain in full force and effect in accordance with its terms. I reserve the authority to execute further waivers from time to time as I may determine to be necessary under section 102 of IIRIRA.

Dated: October 4, 2018.

**Kirstjen M. Nielsen,**

*Secretary of Homeland Security.*

[FR Doc. 2018–22063 Filed 10–10–18; 8:45 am]

**BILLING CODE 9111–14–P**

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. FR–5994–N–04]**

## Operations Notice for the Expansion of the Moving to Work Demonstration Program; Republication and Extension of Comment Period

**AGENCY:** Office of Public and Indian Housing, HUD.

**ACTION:** Notice.

**SUMMARY:** HUD is republishing the Operations Notice published in the **Federal Register** on October 5, 2018, which omitted the Appendix. This Notice includes the Appendix and the public comment period is extended accordingly.

The Public Housing/Section 8 Moving to Work (MTW) demonstration program was first established under Section 204 of the Omnibus Consolidated Rescissions and Appropriations Act of 1996 to provide statutory and regulatory flexibility to participating public housing agencies (PHAs) under three statutory objectives. Those three statutory objectives are: To reduce cost and achieve greater cost effectiveness in Federal expenditures; to give incentives to families with children whose heads of household are either working, seeking work, or are participating in job training, educational or other programs that assist in obtaining employment and becoming economically self-sufficient; and to increase housing choices for low-income families. This Operations Notice for the Expansion of the MTW Demonstration Program (Operations Notice) establishes requirements for the implementation and continued operation of the MTW demonstration program pursuant to the 2016 MTW Expansion Statute.

**DATES:** *Comment Due Date:* November 26, 2018.

**ADDRESSES:**

*Electronic Submission of Comments.* HUD strongly encourages interested persons to submit comments electronically. Electronic submission of comments allows the commenter maximum time to prepare and submit a comment, ensures timely receipt by HUD, and enables HUD to make them immediately available to the public. Interested persons may submit comments electronically through the Federal eRulemaking Portal at *www.regulations.gov.* Comments submitted electronically through the *www.regulations.gov* website can be viewed by other commenters and interested members of the public. Commenters should follow the instructions provided on that site to submit comments electronically.

*Submission of Comments by Mail.* Alternatively, interested persons may submit comments regarding this Notice to the Regulations Division, Office of General Counsel, Department of Housing and Urban Development, 451 7th Street SW, Room 10276, Washington, DC 20410–0500. Communications must refer to the above docket number and title.

*Note:* To receive consideration as public comments, comments must be submitted through one of the two methods specified above. Again, all submissions must refer to the docket number and title of the Notice.

*No Facsimile Comments.* Facsimile (fax) comments are not acceptable.

*Public Inspection of Public Comments.* All properly submitted comments and communications submitted to HUD will be available for public inspection and copying between 8 a.m. and 5 p.m. weekdays at the above address. Due to security measures at the HUD Headquarters building, an appointment to review the public comments must be scheduled in advance by calling the Regulations Division at 202–708–3055 (this is not a toll-free number). Individuals with speech or hearing impairments may access this number via TTY by calling the Federal Relay Service at 1–800–877–8339 (this is a toll-free number). Copies of all comments submitted are available for inspection and downloading at *www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** Marianne Nazzaro, Director, Moving to Work Demonstration Program, Office of Public and Indian Housing, Department of Housing and Urban Development, 451 7th Street SW, Room 4130, Washington, DC 20410; email address *mtw-info@hud.gov.*

**SUPPLEMENTARY INFORMATION:** This republication of the October 5, 2018 Operations Notice, originally published at 83 FR 50387, includes an Appendix that was omitted.

## I. Background

Section 239 of the Fiscal Year 2016 Appropriations Act, Public Law 114–113 (2016 MTW Expansion Statute), signed by the President in December 2015, authorizes HUD to expand the MTW demonstration program from the current size of 39 agencies to an additional 100 agencies over a period of 7 years. This Notice was originally published on January 23, 2017, in the **Federal Register**, entitled "Operations Notice for the Expansion of the Moving to Work Demonstration Program

EXHIBIT A-06

TO

DECLARATION OF MARK J. COURTOIS

1/7/2020
A look at the effort to build a border wall in the RGV - The Monitor
Case 7:19-cv-00411    Document 29-1    Filed on 01/20/20 in TXSD    Page 50 of 62
Exhibit A-06

# A look at the effort to build a border wall in the RGV

**Mark Reagan** - December 30, 2019



The border wall under construction on Thursday, Nov. 21, 2019, south of Donna. (Joel Martinez | jmartinez@themonitor.com)

As 2019 comes to a close, the third anniversary of Executive Order 13767 is fast approaching.

President Donald Trump signed the directive, also known as the Border Security and Immigration Enforcement Improvements order, on Jan. 25, 2017, just days after taking office in his first step to fulfill a campaign promise he made from Trump Tower in New York City in 2015 when he announced he was seeking the Republican nomination for president.

In that speech, Trump promised to build a wall while accusing Mexico of sending drug dealers, criminals and rapists to the United States.

He also promised that Mexico would pay for the wall. That hasn't happened.

Instead, Congress has appropriated $1.4 billion to fund the border barrier.

So where do efforts by U.S. Customs and Border Protection to build a wall in the Rio Grande Valley — the busiest region in the nation for drug trafficking and apprehensions of people crossing the Rio Grande illegally — stand?

The first indication of any real action here began in October 2018, when the Department of Homeland Security waived numerous laws so that it could construct 11 gates in gaps along existing border wall in Cameron County. That same month, the U.S. government filed a land condemnation lawsuit against the Catholic Diocese of Brownsville seeking right of entry to the historic La Lomita Chapel for surveying purposes for a border wall.

These occurrences followed news that CBP also wanted to survey and eventually build a wall in the Santa Ana National Wildlife Refuge, an ecologically diverse gem that attracts outdoor enthusiasts from across the country for its birding opportunities.

Exhibit A-06

Since then, lawmakers in Congress were able to add protections in the last budget bill protecting the Santa Ana National Wildlife Refuge, La Lomita Historical Park, Bentsen-Rio Grande Valley State Park, within or east of the Vista del Mar Ranch tract of the Lower Rio Grande Valley National Wildlife Refuge where SpaceX has a facility, and the National Butterfly Center.



Both Santa Ana and the Lower Rio Grande Valley refuges are federally owned, while Bentsen-Rio Grande Valley State Park is managed by the state of Texas. La Lomita and the National Butterfly Center are privately owned, much like the rest of the parcels of land that hug the Rio Grande as it winds through Starr, Hidalgo and Cameron counties before spilling out into the Gulf of Mexico.

And private property has slowed CBP's efforts to build border wall in the Rio Grande Valley as directed by Trump on Jan. 25, 2017.

*U.S. Border Patrol agents stand in unison as DHS Acting Homeland Secretary Chad Wolf tours and speaks to the local media in front of the border wall under construction on Thursday, Nov. 21, 2019, south of Donna. (Joel Martinez | jmartinez@themonitor.com)*

Since November 2018, the federal government has filed 19 land condemnation lawsuits against property owners in Cameron, Hidalgo and Starr counties seeking access to just over 570 acres of land for the purposes of surveying for the planned construction of a border wall.

Of those lawsuits, the government filed its first actual declaration of taking against two properties this month.

One of those cases is against Frank Schuster Farms and El Sabino Family Farms for a total of 23.311 acres. The government has deposited $310,873 as just compensation for the land in the court's registry. The defendants have not yet filed an answer.

In the other case, the government is seeking just over 6 acres in a case that involves 91 defendants. The government has deposited $25,000 into the court's registry as just compensation and none of the defendants have yet filed an answer.

Seven of these cases are resolved, with owners granting the government a right of entry for surveying purposes. The government has paid out just $1,025 to defendants involved in six of those cases while the seventh just allowed the government entry. In one case that involved numerous defendants, the government paid out $350 to a principal landowner and split $175 between 44 people for $3.99 apiece, according to court records.

Nine of these cases are currently in litigation with the vast majority being in Hidalgo County, including the actual takings. In one case in Starr County, the government has been unable to locate the landowner.

However, more land condemnation lawsuits could be in the works.

In June, CBP sent letters to residents in Brownsville's River Bend Resort & Golf Club stating it intends to build border wall in the area in early 2020, a statement echoed in CBP's most recent border wall contract announcement at the end of September.

In a news release, CBP said that in partnership with the U.S. Army Corps of Engineers, it awarded three contracts to construct approximately 65 miles of new border wall in Starr, Hidalgo and Cameron counties.

"Construction is anticipated to begin in early 2020, pending availability of real estate, and will take place in locations where no barriers currently exist," CBP said in a news release.

That pending real estate is likely the target of land condemnation lawsuits filed by the government.

These plans include approximately 21 miles of border wall in Starr County to be built by Southern Border Constructors for a base contract amount of $120,412,400 with a total contract value of $257,808,800.

"The project area begins west of Falcon Dam Port of Entry and extends eastward, in five non-contiguous segments, which will connect to other new border wall segments," the release stated.

Southern Border Constructors received another contract for border wall in Starr and Hidalgo counties for 22 miles of wall with a base contract of $110,022,700 and a total contract value of $258,085,400. The project will begin east of the Rio Grande City Port of Entry and extend eastward in two non-contiguous segments that will connect to new border wall segments, according to CBP.

Lastly, CBP awarded a contract to Gibralter-Caddell Joint Venture for 22 miles of border wall in Cameron and Hidalgo counties for a base contract amount of $155,269,991 and a total contract value of $296,709,805.

"The project area begins east of the Pharr Port of Entry and extends eastward, in 12 non-contiguous segments, which will connect to other new border wall segments," CBP stated.

So is there any new border wall in the Rio Grande Valley?

The answer is yes, but not much.



CBP began installing the first panels of new border wall here Nov. 1 in the Donna area, which acting DHS Secretary Chad Wolf visited at the end of November.

CBP awarded this construct to SLSCO in the amount of $167 million Nov. 14, 2018, nearly a year before actual construction began.

*DHS Acting Homeland Secretary Chad Wolf, center, tours and speaks to the local media in front of the border wall under construction on Thursday, Nov. 21, 2019, south of Donna. (Joel Martinez | jmatinez@themonitor.com)*

This section of border wall is planned for 8 miles in five segments south of Donna, Alamo, Weslaco, Progreso and Mercedes.

When it awarded the contract, CBP said construction would begin in February 2018.

Despite continued delays three years into CBP's efforts to fulfill Executive Order 13767 that have been hindered by private property rights, outcry from local residents trying to protect wildlife refuges, cemeteries and a historic chapel, and by lawmakers across the country, the border agency has set an aggressive goal for building new border wall, according to a Dec. 17 Reuters report.

"Our goal at the end of 2020 was 450 miles," CBP acting Commissioner Mark Morgan told reporters recently, according to Reuters. "It's hard right now to be able to say whether we're still going to be able to meet that goal, but I'm confident that we're going to be close."

mreagan@themonitor.com

Case 7:19-cv-00411   Document 29-1   Filed on 01/20/20 in TXSD   Page 53 of 62

**Mark Reagan**

Mark Reagan is a reporter for The Monitor. He can be reached at mreagan@themonitor.com or at (956) 683-4437.

EXHIBIT A-07

TO

DECLARATION OF MARK J. COURTOIS

Case 7:19-cv-00411     Document 29-1   Filed on 01/20/20 in TXSD   Page 55 of 62

**Exhibit A-07**

NEWS

# Meet the Americans fighting crime at 'ground zero' of the border crisis

By Isabel Vincent

April 18, 2019 | 7:29pm



Deputy Sheriff Elias Pompa of the Brooks County Sheriff's office

Angel Chevrestt

LA FERIA, TEXAS — Joe Adalpe III wants the border wall.

The 32-year-old captain of the Cameron County Constable, Precinct 5, has been fighting crime in this small city of 5,000 nestled among onion and corn fields on the banks of the Rio Grande — "ground zero" in the migrant border crisis — for more than a decade.

"We are the first line of defense here," Adalpe told The Post.

After he and his colleagues apprehend traffickers or migrants crossing the border, they contact Customs and Border Patrol agents.

The Mexican-American cop says he's seen crime spike in the area over the past few years, with an increase in drug trafficking from Mexico and sexual assaults against women migrants who are forced into sexual slavery when their families can't pay the thousands of dollars to the traffickers who bring them over the border.

**Exhibit A-07**

Wearing dark glasses and a sharp blue suit, with a pair of handcuffs dangling from his belt, the mustachioed investigator has found bundles of marijuana stashed in places such as a pump house on an onion farm near the meandering Rio Grande.



00:12 / 00:15

AD                            SKIP AD ›

He also regularly cracks down on dealers pushing "Xanax bars" — prescription drugs that traffickers buy over the counter in Mexico for $20 a bottle and peddle through south Texas for $5 a pill.

But with a staff of only three constables to patrol an area of 254 square miles, Adalpe said he is afraid that a lot of "bad guys" may be getting away.

While there are currently 60 miles of border fence, which was erected under the Obama administration, there are still large gaps in the barrier, allowing drug smugglers and undocumented migrants to cross into south Texas.

A portion of the border fence erected during the Obama administration

A portion of the border fence erected during the Obama administration

Angel Chevrestt

Last year, the federal Department of Homeland Security signed off on a project to install 35 electric gates in the region, a welcomed boost, the cop said.

But President Trump's promised wall is needed, he said.

"We feel the fence or the wall will slow them down. It's a tool to help us intercept these people," said Adalpe, whose unit gets some state and federal funding to provide overtime pay for staff.

"We are the boots on the ground, and we are asking for resources."

Over the past week, The Post accompanied three local law-enforcement officers, including Adalpe, in ride-alongs in three different counties.

Two of the counties — Hidalgo and Cameron — are on the border with Mexico. The third, Brooks, is adjacent to a Customs and Border Patrol inspection station nearly 75 miles north of the border. All traffic must pass the inspection station on its journey north.

In Mission, a city of more than 77,000 in Hidalgo County, Constable Lazaro "Larry" Gallardo, 55, has seen 60 to 100 migrants coming across the border in a single six-hour period, he told The Post.


Constable Lazaro "Larry" Gallardo
Angel Chevrestt

"Our job is to make sure that drugs and bad guys don't come over the border,'' he said.

"We are the wall."

He said his group receives a $90,000 grant from Homeland Security and the same amount from the state every year to pay for overtime for the constables that patrol the border area. But his precinct is still stretched thin, he said.

Among his main concerns is offering protection to the women and children who come over the border, trying to prevent them from being taken to "stash houses" where they are sexually assaulted.

He told The Post he has seen migrants who have escaped traffickers with marks on their wrists from captivity.

On Wednesday, The Post went on a ride-along near the Aznalduas Dam, which has dozens of cameras and motion sensors installed to monitor migrants and traffickers crossing this popular part of the Rio Grande, where the water levels are relatively shallow.

The patrol apprehended two migrant families from Central America who were wandering lost among the cactus and brush near the US side of the dam.


Hidalgo County line signage
Angel Chevrestt

The families — one from Guatemala and the other from El Salvador — carried nothing but a single bag for each group and seemed dazed after their harrowing journey. They said they waited two days to cross the river, paying the equivalent of $5 each to cross over in a raft.

"We're so relieved to be here," said Julie Guadalupe Duran, 25, explaining that she traveled on foot and by bus with her 2-year-old daughter Marjorie and her 11-year-old niece.

Duran said she left her home in San Salvador on March 9 after she received numerous death threats from the Calle 18 gang, a rival of MS-13.

Duran had gone to police to tell them that the father of one of the gang members sexually assaulted her niece, who lives with her. Gang members soon paid her family a visit, and "said if we didn't take back our testimony, they would kill us," Duran told The Post, adding that she hopes to join family members in Houston after she is processed by Border Patrol agents.


Julie Guadalupe Duran, center, holding her daughter, Marjorie Duran, and niece, Ashly Nhomy Vasquez
Angel Chevrestt

Eighty-three miles north, in Falfurrias, a city of just under 5,000 surrounded by a rugged terrain cut by brush and cactus dotted with blue barrels of water that local volunteers leave for migrants, Elias Pompa, 42, puts in 16-hour shifts patrolling an area of more than 1,000 square miles.

He is one of five deputies who goes on patrol alone.

"We can't afford to have more than one deputy patrol at a time," he said.

The Brooks County Sheriff's Deputy has been involved in 250 vehicle pursuits in his 10 years on the beat.

His fellow cops have christened him "Chicken Hawk" for his sharp-eyed observations that have led to seizures of drugs and migrants.

He watches for new footprints on the sandy terrain and ranch fences that are slightly bent where migrants and traffickers have crossed into the brush on the sprawling ranches that surround both sides of Highway 281.

The area, known as "Death Valley," is the site where more than 600 migrants have been found dead in the past 10 years, their grisly remains picked up by the Brooks County Sheriff's Office and sent to the medical examiner's office in Hidalgo County.

"It's always the little details that give them away," Pompa told The Post sipping on a large cardboard McDonald's coffee cup.

Pompa once apprehended a work truck because he noticed there was no ladder on the back. There were 21 migrants stuffed into the back, and when the truck came to a screeching halt, the migrants scrambled in "a bail-out."

Some of them were only able to try to crawl away because their legs and feet were so numb from being cramped up in the truck, he said.

"I have a real curious mind," Pompa told The Post when asked how he is able to spot smugglers so well.

For example, he said he noticed that most traffickers modify the rear suspension of their vehicles so that they don't sag under the weight of the many people they are cramming in.



Elias Pompa shows a hiding spot in a fake work truck used by human smugglers

Angel Chevrestt

He often seizes trucks that have no rear passenger seats, which allows them to accommodate dozens of migrants lying on top of each other. He once captured a Dodge Neon with only the driver's seat intact and several migrants crammed in the back.

"They keep doing this over and over again," he said of the drugs and human smugglers who modify cars and trucks in order to spirit drugs and people across the Texas frontier.

Among the trucks he has seized at the Brooks County Sheriff's evidence lot are brand-new pick-up trucks that retail for more than $70,000.

"It shows you how much money these traffickers have when they can afford to lose one of these trucks," Pompa said.

Another time, he noticed a pick-up truck with a young couple in the front. It was the middle of winter, but the windows were open. When he pulled them over, several migrants ran out, and he later found a wig in the passenger seat, indicating that one of the migrants was posing as a woman.

In another chase in 2016, it was the rear windshield wipers that gave the bad guys away. There was no rain, yet the distracted driver of the pick-up he was monitoring had the wipers on. When he stopped them, 12 migrants bailed out.

Three years earlier, in 2013, a Suburban smuggling migrants crashed through a house, killing an elderly woman who was asleep in her bed.

In 2015, the driver of a Chevy Trailblazer hit a tree at 90 mph, killing the seven of nine migrants who were in his vehicle. The 19-year-old driver, who survived the crash, was illegal, said Pompa, who often finds pocket Bibles in Spanish in the trucks along with 10-pound bundles of marijuana and knives that migrants carry with them. He once found a pile of women's underwear in one truck, he said.

"We have generations of smugglers here," he said, surveying the scrub. "We deal with their criminal mischief everyday, and we need help."

FILED UNDER    **DRUGS**, **HUMAN TRAFFICKING**, **IMMIGRATION**, **SEX TRAFFICKING**, **TEXAS**, **US BORDER**

Recommended by

EXHIBIT A-08

TO

DECLARATION OF MARK J. COURTOIS

ADVERTISEMENT

73°    74°    77°

*Search Site*    

# Border Patrol agents recover bodies of four migrants in RGV

by CBS 4 Staff
Wednesday, August 14th 2019

AAA



*BORDER PATROL HEAT.jpg*

HARLINGEN, Texas — United States Patrol agents found the body of a migrant near the
National Butterfly Center in Mission Tuesday, the fourth body found in the Rio Grande Valley in
less than a week.

**Exhibit A-08**

ADVERTISING

73°    74°    77°

*Search Site*    🔍

Agents found an identification card near the body, but the person has not been officially identified.

On Thursday, August 8, Texas Department of Public Safety received a report of a body near Sullivan City. DPS, Border Patrol agents and the Hidalgo County Sheriff's Office searched the area and found a body in the brush.

On Friday, August 9, agents working at the Javier Vega, Jr. Immigration Checkpoint were notified of a migrant who had been abandoned at a nearby ranch. When the agents located the migrant, he had died. They worked with the Kenedy County Sheriff's Office to move the body to a local funeral home.

On Saturday, August 10, agents patrolling near La Grulla found a body in the brush.

Several areas of the Rio Grande Valley experienced record heat this week, but Border Patrol officials have not said if that contributed to the migrants' deaths.

---

**MORE TO EXPLORE**

**Edinburg police conducts drug raid; three arrested**

Border Patrol agents recover bodies of migrants in RGV | KGBT

**h assault**

*Search Site*    🔍

**Brownsville police searching for person of interest**

**SPONSORED CONTENT**

**The Genius Hack Every Home Depot Shopper Should Know**
**Wikibuy**

**US Cardiologist: It's Like a Pressure Wash for Your Insides**
**Total Restore Supplement**

**Why Food at the Dollar Store is Really So Cheap**
**Definition**

Sponsored Links by Taboola

ADVERTISEMENT

Loading ...