UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN BUTTERFLY ASSOCIATION d/b/a THE NATIONAL BUTTERFLY CENTER and MARIANNA TREVINO WRIGHT, *Plaintiffs,* <br><br> v. <br><br> NEUHAUS & SONS, LLC; BRIAN KOLFAGE; WE BUILD THE WALL, INC.; FISHER INDUSTRIES; and FISHER SAND AND GRAVEL CO. *Defendants.* | § § § § § § § § § § § § § § | CASE NO. 7:19-CV-00411 |

**PLAINTIFFS' OBJECTION AND RESPONSE TO FISHER DEFENDANTS'
AND NEUHAUS & SONS' MOTIONS TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs North American Butterfly Association d/b/a The National Butterfly Center ("the Butterfly Center") and Marianna Trevino Wright ("Wright") file this response in opposition to (1) the amended motion to dismiss filed by Fisher Industries and Fisher Sand and Gravel Co. (collectively "Fisher Defendants"); and (2) the joinder of said motion by Neuhaus & Sons, LLC ("Neuhaus"). ECF #29, 30.

For the reasons set forth below, neither Fisher Defendants nor Neuhaus are entitled to dismissal.

**I.    Objection to Neuhaus' Joinder**

1.    Federal Rule of Civil Procedure 81(c)(2) states, in relevant part, the following:

> A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:
> (A) 21 days after receiving—through service or otherwise—a
>      copy of the initial pleading stating the claim for relief;

    (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
    (C) 7 days after the notice of removal is filed."

FED. R. CIV. P. 81(c)(2). The record before the Court establishes the following:

- Neuhaus did not file an answer in the state court prior to removal (ECF #1-5);
- Neuhaus received a copy of Plaintiffs' pleading and was served with the summons on December 3, 2019 (ECF #1-2 at 2; ECF #1-5); and
- the notice of removal was filed on December 13, 2019 (ECF #1).

Based on these dates and upon applying Rule 81(c)(2), Neuhaus' deadline for filing a Rule 12(b) motion was December 24, 2019. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007) (explaining that Rule 81(c) operates to "set the deadline for [a defendant] to make its first responsive pleading or motion after removal"). Because Neuhaus did not file a motion to dismiss on or before December 24, 2019 motion and did not obtain leave to file such a motion after that date, its attempt to seek Rule 12(b)(6) dismissal is untimely. Moreover, Neuhaus' attempt to seek Rule 12(b)(6) dismissal is untimely because it filed an answer on December 23, 2019 (ECF #10), which came before Neuhaus' January 22, 2020 joinder of Fisher Defendants' motion to dismiss. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (holding that Rule 12(b)(6) motion that followed an answer was untimely). For all these reasons, the Butterfly Center objects to Neuhaus' improper attempt to shoehorn its untimely motion to dismiss into Fisher Defendants' motion to dismiss through a purported "joinder."[1]

**II.   ARGUMENT**

    2.    When considering a defendant's Rule 12(b)(6) motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff. *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824

---

[1] Fisher Defendants originally filed their motion to dismiss on January 7, 2020, which was the 21st day from the December 17, 2019 date that Fisher Defendants were served. Accordingly, Fisher Defendants original motion to dismiss was timely filed. Because their original motion to dismiss was timely, Plaintiffs do not contend that their amended motion to dismiss is untimely.

(9th Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). If the complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56.

> **A. The Butterfly Center's nuisance claim against Fisher Defendants and Neuhaus should not be dismissed.**

3. In *Freedman v. Briarcroft Property Owners, Inc.*, the Texas Fourteenth Court of Appeals rejected the defendant/appellant's argument that plaintiff's nuisance claim—which concerned an unbuilt parking lot (i.e., a prospective nuisance in fact)—was not "ripe" for litigation. 776 S.W.2d 212, 216 (Tex. App.— Houston [14th Dist.] 1989, writ denied). In rejecting the argument, the Fourteenth Court stated the following about law of nuisance:

> In point of error three, appellants contend the trial court erred in denying . . . their motion for new trial based on the contention that the issue of nuisance was not "ripe" for litigation. . . . Therein, appellants appear to contend that appellee was required to wait until the parking lot was in existence before appellee could complain of threatened injury.
>
> The law of nuisance may be divided into two categories; nuisance per se and nuisance in fact. A nuisance per se or at law is an act, occupation, or structure which is a nuisance at all times, regardless of location. A nuisance in fact or per accidens is one which becomes a nuisance by reason of circumstances and surroundings. *Id.* What constitutes a nuisance is one of degree and usually turns on a question of fact. Occasionally, the issue of the existence of a nuisance also raises questions involving technical propositions of law and matters of public policy. Precedents drawn from various cases are usually of little value because of the differences in the facts and circumstances. Every case must stand on its own footing. Whether a nuisance exists is a question to be determined not merely by a consideration of the thing itself, but with respect to all attendant circumstances.
>
> The general rule is that an injunction will be granted only to restrain an existing nuisance and not to restrain an intended act on the ground that it may become a nuisance. However, a court of equity is empowered to interfere by injunction to prevent a threatened injury where an act or structure will be a nuisance per se, *or will be a nuisance for which there is no adequate remedy at law*, *or where*

> *a nuisance is imminent*. When an attempt is made to enjoin an anticipated nuisance, the threatened injury must not be merely probable but reasonably certain before a court will exercise its equitable power to restrain it.
>
> Although a parking lot is not a nuisance per se, the parking lot did not have to be in existence to bring this claim. Appellants' intent to create the parking lot was imminent. Whether appellants' conduct constituted a threatened nuisance was for the fact-finder. However, appellee's suit was certainly ripe enough to complain of appellant's imminent conduct. Point of error three is overruled.

*Id*. (citations omitted; emphasis added). The *Freedman* court went on to hold (1) that the jury was entitled to decide whether or not "the proposed use of the lot in question would be a nuisance," which the jury did so find; and (2) that the trial court, as a result of the jury's finding, was entitled to provide the plaintiff with permanent injunctive relief. *Id*. at 216-17.

  4. Pursuant to *Freedman*, the Court should find that the Butterfly Center has alleged a viable nuisance claim and plausible right to relief since the Second Amended Complaint alleges sufficient facts to support a determination that (1) there "will be a nuisance for which there is no adequate remedy at law" when considering the resulting damage to the Butterfly Center's land;[2] and (2) the prospective "nuisance is imminent." *Freedman*, 776 S.W.2d at 216. Furthermore, the Second Amended Complaint alleges sufficient facts to support the conclusion that (1) Fisher Defendants may be liable for nuisance since they are actively building the wall; and (2) Neuhaus may be liable for nuisance since—as the property owner of the land on which the wall is being built—it has authorized the wall's construction and has the ability to terminate that construction.

  5. In seeking dismissal, Fisher Defendants argue that *1717 Bissonnet, LLC v. Loughhead*, 500 S.W.3d 488 (Tex. App.—Houston [14th Dist.] 2016, no pet.), establishes that the Butterfly Center does not have a viable claim. But *Bissonnet*

---

[2] *See, e.g., Knight v. Volkart*, No. 13-01-00858-CV, 2002 WL 31623580, at * (Tex. App.—Corpus Christi Nov. 21, 2002, no pet.) (mem. op.) (recognizing that "loss of real property is an irreparable injury").

actually establishes the opposite. ECF #40 at 2-3. In *Bissonnet*, the trial court awarded the plaintiff damages on a claim for prospective nuisance while denying plaintiff's requested permanent injunction. *Id*. at 491. On appeal, the appellate court vacated the damage award, but that outcome was not predicated on the appellate court deciding that Texas law did not recognize a prospective-nuisance claim. *Id*. at 496-98. In fact, the appellate court recognized that a prospective-nuisance claim could be utilized to pursue a permanent injunction. *Id*. at 497 ("A court may exercise its equitable power to enjoin a prospective nuisance under certain circumstances."). Upon recognizing that point of law, the appellate court went on to hold that—under the unique facts of that case—the trial court did not abuse its discretion in denying injunctive relief after a jury trial on the merits. *Id*. at 500-03.

6. As expressed in its pleading, the Butterfly Center is seeking "(1) actual damages for any injury to its property that may occur by the date of trial and (2) equitable relief in the form of both a temporary and permanent injunction enjoining Defendants from developing the currently proposed wall (or something similar) on the Neuhaus Property." ECF #32 at ¶ 22. Because the Butterfly Center is expressly seeking permanent injunctive relief, the Court should find that a viable prospective-nuisance claim has been pled. The Butterfly Center's qualified request for damages—i.e., its request for damages for "any injury to its property *that may occur* by the date of trial"—is intended to provide fair notice that the Butterfly Center's prospective-nuisance claim may transition into a traditional nuisance claim should the wall approach or reach completion during the pendency of this litigation. The Butterfly Center's qualified request for damages does not provide a basis for viewing as invalid the entirety of the prospective-nuisance claim.

7. Fisher Defendants appear to suggest that because the Court has denied the Butterfly Center's request for a temporary injunction, that ruling should be dispositive of whether the Butterfly Center has a meritorious claim for permanent injunctive relief. ECF #40 at 3. Fisher Defendants cite no legal

authorities to support this contention, which is plainly wrong. The Court's assessment as to whether the Butterfly Center has a viable prospective-nuisance claim for Rule 12(b)(6) purposes entails looking at the four corners of the Butterfly Center's pleading—not the evidence that was submitted at the hearing on the Butterfly Center's application for temporary injunctive relief.

8. Fisher Defendants lastly argue that Wright has no viable nuisance claim (ECF #29 at 7-8), but Plaintiffs' pleading makes clear that only the Butterfly Center is pursuing a nuisance claim. ECF #32 at 6.

9. In Neuhaus' motion, Neuhaus asks the Court to find that it has no control over the wall's construction based on allegations Neuhaus' raised in its original answer. *See* ECF #30 at ¶ 5. But a proper Rule 12(b)(6) analysis requires a court to accept as true the allegations a plaintiff's pleading—not the allegations in a defendant's pleading. Neuhaus seeks contends, without citing to supportive authority, that it cannot be liable for prospective nuisance because it is not actively involved in the construction of the wall. *Id*. But Neuhaus may be held liable for nuisance by mere virtue of the fact that it is the owner of the property on which the nuisance is being constructed. In *Freedman*, for example, it was the owner of the land on which a parking lot was to be built who was permanently enjoined; it mattered not whether the landowner was actually doing the manual labor involved in constructing the parking lot. *See Freedman*, 776 S.W.2d at 214 (noting that the suit was against "Barry Lewis, beneficial owner").

    **B.**    **The Butterfly Center has nonsuited its claim under the Texas Water Code.**

10. Though the Butterfly Center at one time asserted a claim under Texas Water Code § 11.086, that claim has since been abandoned through the filing of Plaintiffs' Second Amended Complaint. ECF #32. Accordingly, Fisher Defendants' and Neuhaus' request for dismissal of that claim has been rendered moot.

### C. The Butterfly Center's defamation and business disparagement claims and Wright's defamation claim should not be dismissed.

11. While adopting Fisher Defendants' grounds for why the defamation claims should be dismissed, Neuhaus takes the additional step of arguing that the defamation claims should be dismissed in light of what it has alleged in its original answer. ECF #30 at ¶ 9. This argument is plainly at odds with the law. *See Villarreal v. Wells Fargo Bank, NA*, 814 F.3d 763 (5th Cir. 2016) ("When reviewing a dismissal under Rule 12(b)(6), we must accept as true the well-led factual allegations in the complaint, and construe them in the light most favorable to the plaintiff." (brackets and internal quotation marks omitted)).

12. In Fisher Defendants' motion to dismiss, they argue that the defamation and business disparagement claims should be dismissed pursuant to the Texas Citizens Participation Act ("TCPA"). Setting aside the fact that a request for dismissal under the TCPA cannot be shoehorned into a Rule 12(b)(6) motion, Fisher Defendants' request for dismissal under the TCPA must be rejected because "the TCPA does not apply in federal court." *MCR Oil Tools, LLC v. SPEX Group US, LLC*, 785 Fed. Appx. 241, 242 (5th Cir. Nov. 20, 2019).

13. Though Fisher Defendants' motion to dismiss spends five pages addressing the defamatory statements at issue, all but one sentence within those five pages concerns dismissal under the TCPA, not Rule 12(b)(6). The one sentence from Fisher Defendants that appeals to Rule 12(b)(6) is the following: "Further it is apparent that none of the statements complained of by Plaintiffs direct [sic] name Plaintiff Wright individually, so as additional ground for dismissal, her claims should be dismissed for failing to state a claim upon which relief can be granted." ECF #29 at 14. This argument fails because Texas courts have recognized that "[a] publication may clearly be defamatory as to someone, and yet on its face make no reference to the individual plaintiff." *Davis v. Davis*, 734 S.W.2d 707, 711 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Though the defamatory statements at issue were expressly directed at the Butterfly Center, any reader of those statements would reasonably conclude that the Butterfly Center's alleged

criminal wrongdoing was being facilitated through the Butterfly Center's agents in positions of leadership. Accordingly, though no direct reference was made to Wright, accusations that the Butterfly Center was economically sustaining itself through rampant criminal activity permit a reader to reasonably infer that Wright—as the Butterfly Center's executive director—was facilitating that criminal activity.

14. Having failed to assert any other basis for dismissal under Rule 12(b)(6), the Court should proceed no further in assessing whether Fisher Defendants are entitled to dismissal of the Butterfly Center's business-disparagement claim and Wright's defamation claim, for any further assessment would entail a review of unasserted grounds for dismissal. That said, should the Court look beyond the arguments raised, it should still hold that the Butterfly Center has asserted a viable business-disparagement claim and that Wright has asserted a viable defamation claim against both Fisher Defendants and Neuhaus. Though the defamatory statements at issue were published by Brian Kolfage, Plaintiffs have alleged that he made those statements (1) while serving as an agent for Fisher Defendants and Neuhaus and (2) with the intent of generating support for the wall's construction, as desired by Fisher Defendants and Neuhaus. ECF #23 at ¶ 12-14, 23. *See, e.g., Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) (recognizing its adoption of rule that corporation may be liable for defamation committed by its agent). The statements at issue—alleging Plaintiffs' involvement in criminal activity—are unquestionably defamatory and damages in connection therewith have been pled.

15. For all these reasons, the Court should deny Fisher Defendants' and Neuhaus' requests to dismiss the business-disparagement and defamation claims.

### III. CONCLUSION

16. Because Plaintiffs stated claims on which relief can be granted against Fisher Defendants and Neuhaus, the Court should deny their requests for dismissal.

Respectfully submitted,

**PEÑA AND VELA, P.L.L.C.**
203 South 10th Street
Edinburg, Texas 78539
Phone: (956) 383-0751
Fax: (956) 383-5980
Email: office@penavelalaw.com

By: */s/ Javier Peña*_____
      JAVIER PEÑA
      State Bar No. 24005092
      REBECCA VELA
      State Bar No. 24008207

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2020, all counsel of record who have consented to electronic service were served with a copy of this document via the Court's CM/ECF system.

/s/ *Javier Peña*
Javier Peña