**UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| NORTH AMERICAN BUTTERFLY ASSOCIATION d/b/a THE NATIONAL BUTTERFLY CENTER and MARIANNA TREVINO WRIGHT, *Plaintiffs,* <br><br> v. <br><br> NEUHAUS & SONS, LLC; BRIAN KOLFAGE; WE BUILD THE WALL, INC.; FISHER INDUSTRIES; and FISHER SAND AND GRAVEL CO. *Defendants.* | § § § § § § § § § § § § § § | CASE NO. 7:19-CV-00411 |

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs North American Butterfly Association d/b/a The National Butterfly Center ("Butterfly Center") and Marianna Trevino Wright ("Wright") file this "Third Amended Complaint" to bring claims and seek damages against Defendants Neuhaus & Sons, LLC ("Neuhaus"); Brian Kolfage ("Kolfage"); We Build the Wall, Inc. ("WBTW"); Fisher Industries; and Fisher Sand and Gravel Co. ("Fisher Sand").

**I. Parties**

1. Plaintiff North American Butterfly Association is a nonprofit doing business in Hidalgo County, Texas as The National Butterfly Center.

2. Plaintiff Marianna Trevino Wright is an individual resident of Hidalgo County, Texas who appears in her individual capacity.

3. Defendant Neuhaus & Sons, LLC is a registered Texas Limited Liability Company which owns property and does business in Hidalgo County, Texas. Neuhaus has appeared in this suit.

4. Defendant Brian Kolfage is a resident of Florida. Kolfage was at all times material hereto doing business in Texas. The causes of action asserted arose from and/or are connected with purposeful acts committed by said Defendant

in Texas, as more fully described below. Kolfage has minimum contacts with Texas necessary to establish specific and general personal jurisdiction over said Defendant in Texas courts. Kolfage conducts and solicits business in Texas and has purposely directed its activities to Texas residents such that exercise of jurisdiction over Kolfage comports with and would not violate notions of fair play and substantial justice. He may be served with process by private process server, or by certified mail, return receipt requested at his place of work at 7940 Front Beach Rd, Suite 1042, Panama City Beach, FL 32407 or wherever he may be found.

5. Defendant We Build the Wall, Inc. is a Florida nonprofit corporation doing business in Texas. WBTW has appeared in this suit.

6. Defendant Fisher Sand and Gravel Co. is a North Dakota corporation. Fisher Sand has appeared in this suit

7. Defendant Fisher Industries is a subsidiary of Fisher Sand. Fisher Industries has appeared in this suit.

## II. Jurisdiction and Venue

8. Plaintiffs deny that the Court has subject-matter jurisdiction over this suit and contend that their suit was improperly removed from the 398th District Court of Hidalgo County, Texas. Plaintiffs deny that this Court has either federal-question jurisdiction or diversity jurisdiction.

9. Venue is proper because the state court where this suit had been pending is located in this district. *See* 28 U.S.C. § 1441(a).

## III. Facts

10. Butterfly Center is the owner and possessor of a certain interest in real property located in Hidalgo County, Texas, as more particularly described as follows:

    **Legal Description:** PORCION 52 BNG AN IRR TR S1230.40′-N11627.86′-W786.24′ 18.62AC GR-18.21 AC NET.
    **Address:** 3333 BUTTERFLY PRK DR/ S SHUEBACH TX;

    **Legal Description:** PORCION 52 BNG AN IRR TR N443.42′-S7065.3′-W786.24′ LOTS 7-10 8AC
    **Address:** 3 MILES S SCHUEBACH TX; and

    **Legal Description:** PORCION 52 BNG AN IRR TR N3065.29′-S6621.91′-W995.2′ LOTS 7-10 72 AC GR 64.31AC NET

    **Address:** 3 1/2 MILES S SCHUEBACH TX

11. According to Hidalgo County property records, Neuhaus is the owner of real property located in Hidalgo County, Texas, which neighbors Butterfly Center's property. Neuhaus' property is more specifically described as follows:

    **Legal Description:** PORCION 53 POR 53-FDE LA GARZA & O OCHOA 541.21AC
    **Address:** S LOS EBANOS RD ON RIVER TX; and

    **Legal Description:** BANCO NO. 65 TORTUGA 97.40AC
    **Address:** ON THE RIVER S LOS EBANOS RD TX

    Upon information and belief, Fisher Industries, Fisher Sand, Kolfage, and WBTW (collectively "Builder Defendants") purchased and/or obtained permission from Neuhaus to build a wall ("the subject wall") on Neuhaus' property ("the Neuhaus Property"). Although Builder Defendants have stated on the record that they were in the process of executing a lease with the option to purchase the Neuhaus Property, no property records have been filed to reflect any change in ownership of said property as of the date of this filing.

12. WBTW is a Florida nonprofit corporation that was registered with the State of Florida on or about January 2019. WBTW raises funds with divisive far right rhetoric. Kolfage is WBTW's founder and president. Kolfage has gained notoriety in recent years for his reckless and ornery magniloquence used to raise money for various causes he leads. Kolfage began to publicly speak about his immigration concerns several years back, and he later began requesting that people donate money to him to purportedly help President Trump fund the building of a border wall. Kolfage raised a significant amount of money from private citizens who believed his rhetoric about the dangers of the impending invasion of brown-skinned people across the southern border. It was then discovered that the money Kolfage had taken from his supporters could not legally be given to the federal government. In an effort to cover this up, Kolfage transitioned his efforts to building "private border walls" without governmental approval or oversight. To that end, WBTW and Kolfage have acted as the fundraising arm and agents of Fisher Industries and Fisher Sands

(collectively "Fisher Defendants"). Fisher Defendants directly engage in the planning, development, and construction of these private border walls.

13. Defendants entered into a mutual agreement to benefit each other's interests. Neuhaus believed that allowing WBTW and Fisher Defendants to build a wall on the Neuhaus Property's southern border would deter the federal government from building a wall on said property's northern border. With respect to Fisher Defendants, they saw the subject wall as an opportunity to showcase their new wall design in order to sell the design to the federal government. As for WBTW, it committed itself to helping fund the subject wall and acted as Defendants' media cheerleader for the subject wall's construction; Neuhaus and Fisher Defendants gave WBTW access to the Neuhaus Property and allowed WBTW the authority to claim control over the project in fund raising efforts because all parties sought to gain from those efforts.[1]

14. Defendants engaged in a divide-and-profit approach of fundraising against residents of the Rio Grande Valley. Defendants have falsely claimed that Butterfly Center and its executive director, Wright, are engaged in "human trafficking" and "drug smuggling" in an attempt to vilify Plaintiffs in the eyes of would-be donors. *See* Exhibit "B." More specifically, Kolfage and WBTW published defamatory statements through their Twitter accounts in November 2019. Their defamatory publications reached and were seen by a large number of people in the Rio Grande Valley and throughout the Country. As a result, multiple supporters of Defendants have begun to engage in targeted harassment of Plaintiffs and those supporters have in turn continued the defamatory smears that Kolfage and WBTW started. The reality, however, is that Plaintiffs have never engaged in any criminal activities. The malicious and false attacks on Plaintiffs are but part of Defendants' plan to enrage parts of the populace so they can make a profit off the fears of Americans who are looking for victims to blame for what they believe is wrong with the world.

---

[1] Builder Defendants' relationship with one another and fundraising scheme is detailed in the Southern District of New York's recent indictment of Kolfage. *United States v. Kolfage*, No. 1:20-CR-00412 (S.D.N.Y. Aug. 17, 2020), ECF No. 2.

15. Builder Defendants further their divide-and-profit approach by claiming that they have the solution to the fears that they have stoked. Builder Defendants claim that they can single handedly build a border wall faster than the government and at a fraction of the price. They fail to mention that they can build it faster and cheaper because they do not (1) get approvals for their plans, (2) comply with any laws regarding construction, or (3) conduct any studies to ensure that they will not cause more harm than good. In short, they boast that they can build it faster, cheaper, and *riskier* than professionals.

16. Prior to building the subject wall, Builder Defendants refused to wait for testing and inspections because they planned to be long gone with their donors' money before plans could be vetted. Builder Defendants planned to move on to other locales to fleece more people of more money, leaving Butterfly Center and other local landowners to suffer as a result their negligence. This plan has partially come to fruition because Fisher Defendants have been able to gain over two billion dollars in taxpayer money to build more government walls based on the flawed subject wall.

17. Builder Defendants ignored the government's request to study their plans. On November 15, 2019, Fisher Industries and several of its directors received an official request from the United States Section of the International Boundary and Water Commission (USIBWC) to cease construction of the proposed private border wall. Builder Defendants were directed to (1) file permit applications and submit other required permits with the International Boundary and Water Commission (IBWC) and (2) thereafter give IBWC time to study the plans to ensure compliance with international treaties. On November 27, 2019, Kolfage, WBTW's founder and president, published a tweet stating: "We are not stopping and we are on schedule [sic] start building the wall soon! If only the government could operate this fast, we would have half the border secured by now."

18. Though proper studies and permissions were never obtained, Defendants were allowed to complete the subject wall in violation of the U.S. treaty with Mexico. The subject wall was completed in March of 2020. The subject wall's

design and Fisher Defendants' newly designed riverbanks were touted as being able to drastically curb erosion.  Despite these claims by Fisher Defendants, their new pre-eroded banks only worsened the erosion.  In the few months that the subject wall has existed, the riverbank on the Neuhaus Property  has already had to be repaired at least three times.  No other bank in the vicinity to the private fence has required any repairs to cover up the drastic signs of erosion.

19. Defendants' construction of a permanent steel wall—on a cleared portion of the banks of the Rio Grande River and within the floodplain—will inevitably cause a redirection and buildup of surface water during flooding events. This redirection of surface water and the accompanying debris will cause permanent damage to Butterfly Center's property, which cannot be remedied with any monetary sum. *See* Exhibit "A" (affidavit of Mark R. Tompkins).

20. The subject wall's construction was haphazard, was rushed, and involved too many cut corners to ensure it functioned as designed in the long term. The subject wall is far from the Lamborghini of walls that was promised and more of a beat up used pinto of fences. All evidence points to the fact that this wall is failing and will soon fail catastrophically in the near future.

### IV. Causes of Action & Requested Relief

21. The allegations set forth in the above "Facts" section and the content of all attached exhibits are hereby incorporated by reference into this section.

*Nuisance*

22. The subject wall is approximately three miles long and is made up of 18-foot high galvanized steel bollards, with a 5-inch clearance between each bollard. Attached to this complaint are (1) a "Geotechnical and Structural Assessment Report" prepared by Millennium Engineers Group, Inc. ("the MEG Report"); and (2) an affidavit from civil and environmental engineer Mark Robert Tompkins. Exhibits "C," "D." The content of these two documents is incorporated herein by reference.

23. The MEG Report and Tompkins' affidavit collectively explain (1) that the subject wall was ill-conceived and poorly constructed; (2) that the subject wall

has already caused, and will to a reasonable degree of scientific certainty continue to cause, substantial erosion along the Rio Grande River; (3) that portions of the subject wall are likely to topple into the river due to an inevitably weakened foundation; (4) that, to a reasonable degree of scientific certainty, the subject fence will cause property damage to adjacent lands, including Butterfly Center; and (5) that Defendants attempts, if any, to prevent or minimize damage caused by the subject wall—while leaving the subject wall in place—will ultimately fall short of preventing damage to adjacent lands. For all these reasons, Butterfly Center brings a prospective nuisance claim against Defendants. Defendants are each jointly liable for the subject wall's construction, and they each retain the necessary legal authority and/or property interest to oversee and conduct the dismantling and removal of the subject wall. In connection with its prospective nuisance claim, Butterfly Center seeks a permanent mandatory injunction directing Defendants to dismantle and remove the subject wall.

### *Defamation & Business Disparagement*

24. In or around November 2019, Kolfage and WBTW made a number of defamatory statements while acting within the scope of their general authority as agents of Fisher Defendants and Neuhaus, all of whom conspired together to defame Plaintiffs. Kolfage published disparaging statements relating to Plaintiffs through online social media and did so while acting at the behest of and to further the interest of WBTW, whose president is Kolfage. The defamatory statements made were intended to further the business interests of Neuhaus, Fisher Defendants, WBTW, and Kolfage. Defendants made the subject statements with malice to enrage their supporters and motivate them to donate money to Defendants and their suspect causes. In particular, Kolfage's malice was demonstrated by the fact that Kolfage—upon receiving Plaintiffs' request to retract the subject statements—responded by ridiculing Plaintiffs' effort to resolve the matter amicably. The defamatory statements made entailed false allegations that Butterfly Center made money by engaging in sex/human trafficking and drug trafficking. Readily inferable from such

statements was that Butterfly Center's leadership—namely, its executive director, Wright—was overseeing this alleged criminal activity, for Butterfly Center (like any other entity) can only act through its agents.

25. In connection with said defamatory statements, Wright sues Defendants for defamation. Wright has suffered injury to reputation, personal humiliation, and mental anguish as a result of the aforementioned defamatory statements, for which she seeks to recover damages. Furthermore, Wright's damages may and should be presumed since the statements at issue are defamatory per se in that they falsely alleged the commission of a crime. Wright seeks both actual and exemplary damages in connection with this claim.

26. In connection with said defamatory statements, Butterfly Center sues Defendants for defamation and business disparagement. Butterfly Center's damages may and should be presumed since the statements at issue are defamatory per se in that they falsely alleged the commission of a crime. That point aside, Butterfly Center has incurred general and special damages—including pecuniary loss and injury to its reputation, good name, and community standing—as a result of the defamatory statements, for which it seeks relief. Butterfly Center seeks actual, special, and exemplary damages in connection with these claims.

## V. Conditions Precedent and Capacities

27. All conditions precedent necessary for suit and recovery have been performed or have occurred. Plaintiffs sue Defendants in all capacities in which they are entitled to recover.

## VI. Prayer

For these reasons, Plaintiffs ask the Court to do the following: (1) enter judgment for Plaintiffs; (2) award Plaintiffs actual and exemplary damages; (3) afford Plaintiffs permanent injunctive relief as requested herein; (4) award Plaintiffs attorney

fees; (5) award Plaintiffs prejudgment and post-judgment interest; (6) award Plaintiffs costs of suit; and (7) grant Plaintiffs any other relief the Court deems appropriate.

Respectfully submitted,

**PEÑA AND VELA, P.L.L.C.**
203 South 10th Street
Edinburg, Texas 78539
Phone: (956) 383-0751
Fax: (956) 383-5980
Email: office@penavelalaw.com

By: */s/ Javier Peña*
JAVIER PEÑA
State Bar No. 24005092
REBECCA VELA
State Bar No. 24008207

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 20, all counsel of record who have consented to electronic service were served with a copy of this document via the Court's CM/ECF system.

/s/ *Javier Peña*
Javier Peña