UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| NORTH AMERICAN BUTTERFLY § <br> ASSOCIATION d/b/a THE § <br> NATIONAL BUTTERFLY CENTER § <br> and MARIANNA TREVINO WRIGHT, § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> NEUHAUS & SONS, LLC; BRIAN § <br> KOLFAGE; WE BUILD THE WALL, § <br> INC.; FISHER INDUSTRIES; and § <br> FISHER SAND AND GRAVEL CO. § <br> *Defendants.* § | CASE NO. 7:19-CV-00411 |

**PLAINTIFFS' RESPONSE TO FISHER DEFENDANTS'
AND NEUHAUS & SONS' MOTIONS TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs North American Butterfly Association d/b/a The National Butterfly Center ("the Butterfly Center") and Marianna Trevino Wright ("Wright") file this response in opposition to the "Second Amended Motion to Dismiss" filed by "Fisher Defendants" (consisting of Fisher Industries and Fisher Sand and Gravel Company) and Neuhaus & Sons, LLC ("Neuhaus"). ECF #62. For the reasons set forth below, neither Fisher Defendants nor Neuhaus are entitled to dismissal relief.

**I.    Prior to ruling on any Rule 12(b) motion, the Court must rule on Plaintiffs' pending motion to remand.**

1.    On January 10, 2020, Plaintiffs filed a motion to remand this cause to the state court from which it was removed. ECF #26. That motion remains pending. And because the motion to remand implicates the Court's jurisdiction over this case, that motion must first be ruled on in order for the Court to ascertain the necessity and propriety of ruling on any Rule 12(b) motion. *See Burns Motors, Ltd. v. FCA USA LLC*, No. 7:17-CV-00421, at *5 (S.D. Tex. Jan. 18, 2018) (J. Alvarez)

1

(granting motion to remand and thus denying Rule 12(b)(6) motion as moot). And as has been the case with every prior motion to dismiss filed in this suit, the motion to dismiss that is the subject of this response gives *zero* indication that the resolution of the state-law claims before the Court actually implicate or are intertwined with *any* federal question—the sole jurisdictional basis provided in the notice of removal. The complete lack of any material federal question in this case is quietly conceded in every motion to dismiss that is filed.

## II. Neuhaus is not entitled to dismissal relief because the motion to dismiss is untimely as to it.

2. Federal Rule of Civil Procedure 12(g) dictates that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g). "This rule has been interpreted by courts to mean that the filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." *Law v. Sessions*, No. 4:16-CV-02799, 2017 WL 2405331, at *2 (brackets and internal quotation marks omitted); *see Thompson v. Capstone Logistics, LLC*, No. 4:15-CV-02464, 2016 WL 4570817, at *4 (S.D. Tex. Aug. 31, 2016) (recognizing same).

3. For reasons previously explained (*see* ECF #42 at ¶ 1), Neuhaus did not timely file a Rule 12(b)(6) motion in response to Plaintiffs' First Amended Petition. ECF #9-1, #30. Like Plaintiffs' Third Amended Complaint—which is the subject of Neuhaus' current motion to dismiss—the First Amended Petition similarly asserted a prospective-nuisance claim. Because the dismissal arguments now being made by Neuhaus could have (but were not) timely raised in response to Plaintiffs' superseded pleadings, the Court should deny Neuhaus' request for dismissal relief in full.

**III.   ARGUMENT**[1]

    **A.   Legal standard governing Rule 12(b)(6) motions.**

    1.    "[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (internal quotation marks omitted). When considering a defendant's Rule 12(b)(6) motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff. *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). If the complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56. "[L]ack of detail [in a complaint] does not constitute a sufficient ground to dismiss a complaint under Rule 12(b)(6)." *Ysasi v. Nucentrix Broadband Networks, Inc.*, 205 F. Supp. 2d 683, 686 (S.D. Tex. 2002). Moreover, "[t]o survive a 12(b)(6) motion to dismiss, a complaint need not correctly categorize the legal theories giving rise to the claims; it must merely allege facts upon which relief can be granted." *Rathborne v. Rathborne*, 683 F.2d 914, 917 n.8 (5th Cir. 1982).

    **B.   Texas appellate courts have repeatedly recognized the validity of a claim for prospective/anticipatory nuisance. The Texas Supreme Court's opinion in *Gardiner* did not abrogate this body of law.**

    2.    For over 100 years, Texas appellate courts have recognized the validity of a claim for prospective/anticipatory nuisance, through which a claimant seeks permanent injunctive relief to address a yet-unrealized nuisance. For example, in a 1914 opinion in *Cardwell v. Austin*, the Galveston Civil Court of Appeals affirmed as modified a permanent injunction that—in response to the plaintiff's nuisance claim—enjoined the defendants' construction of a septic concentration tank because the evidence supported a finding that:

---

[1] The sole focus of the motion to dismiss is the Butterfly Center's prospective-nuisance claim, which is not shared with Wright. Because dismissal of the Butterfly Center's and Wright's defamation claims is not being sought, the motion is only seeking a partial dismissal of the claims before the Court.

- construction of the tank would ultimately result in the pollution of a stream;
- the polluted stream would in turn emit a foul odor; and
- the odor from the stream would negatively affect the plaintiff's enjoyment of his home, which was located between 300 to 550 feet away from the stream.

168 S.W. 385, 385-88 (Tex. Civ. App.—Galveston 1914, no writ).

3. Seventy-three years after *Cardwell*, the Houston [14th] Court of Appeals addressed a suit wherein a group of homeowners brought a prospective-nuisance claim against some defendants who wished to build a motel adjacent to the homeowners' neighborhood. *Spiller v. Lyons*, 737 S.W.2d 29, 29 (Tex. App.—Houston [14th Dist.] 1987, no writ). The homeowners sought a permanent injunction prohibiting the construction of the motel on the basis that the motel, if built, would create a nuisance. *Id.* at 29-30. At trial, the homeowners presented the following evidence that the motel would be a nuisance:

> The evidence presented at trial by the residents of the neighborhood established that the increased traffic would be a danger to children walking to and from nearby schools. Appellants testified that their neighborhood was quiet and family-oriented and that traffic and the influx of strangers and transients would be an offense to normal sensibilities. Evidence was presented that there were no businesses, activities or attractions in Hitchcock that would draw potential motel customers. There was testimony that the present water and sewage services were already strained and that operation of a motel would further impair those services. No plans for enlarging those utilities had been made.

*Id.* at 30. After the jury returned a verdict in the homeowners' favor, the trial court issued a judgment and the homeowners' desired permanent injunction. *Id.* at 29. But the trial court later granted the defendants' motion for JNOV and vacate the injunction order, leading the homeowners to appeal. *Id.* The court of appeals found that the trial court erred in granting the JNOV and rendered a judgment reinstating the trial court's initial judgment and permanent injunction. *Id.* at 30.

4. *Cardwell*, *Spiller*, and the cases listed below represent but a sampling of Texas legal authorities recognizing the viability of a claim for prospective nuisance.

4

- *City of Marlin v. Holloway*, 192 S.W. 623, 624 (Tex. Civ. App.—Austin 1917, no writ) (affirming judgment in favor of homeowners against city; homeowners obtained permanent injunction enjoining city from constructing sewage plant, which homeowners contended would have constituted a nuisance).

- *Assembly of God Church of Tahoka v. Bradley*, 196 S.W.2d 696, 697 (Tex. Civ. App.—Amarillo 1946, no writ) ("Ordinarily before the construction of a building, which is not a nuisance per se, will be enjoined, it must appear that the use of the building will necessarily create a nuisance. . . . Whether the use of a building will necessarily create a nuisance is a question of fact which can be tried in advance of the construction of the building.").

- *Conner v. Smith*, 433 S.W.2d 911, 913 (Tex. Civ. App.—Corpus Christi 1968, no writ) ("The rule has been definitively established by our Texas courts that before the construction of a building and the operation of a business not a nuisance per se will be enjoined it must appear that the proposed use of the building will necessarily create a nuisance." (citing string of Texas cases)).

- *Deep E. Tex. Reg'l Mental Health and Mental Retardation Servs. V. Kinnear*, 877 S.W.2d 550, 555 (Tex. App.—Beaumont 1994, no writ) ("A 'nuisance in fact', on the other hand, is a fact situation or determination of an actual nuisance which depends on the facts of each particular case. Before it is proper to enjoin the construction of a house or building, the record must clearly establish that the proposed use or activity therein will necessarily create a nuisance.").

5. In their motion to dismiss, Fisher Defendants and Neuhaus (collectively "Defendants") rely on *Crosstex North Texas Pipeline, LP v. Gardiner*, 505 S.W.3d 580 (Tex. 2016), to argue that Texas does not recognize the Butterfly Center's prospective-nuisance claim. In *Gardiner*, the supreme court was solely focused on the claim of *actual* nuisance, not prospective nuisance. In discussing actual-nuisance claims, the supreme court observed and stated the following:

> [C]ourts have used the term "nuisance" in a variety of ways, including as a reference to a particular legal cause of action, a defendant's conduct that gives rise to that cause of action, an event or activity or operation that is the "cause or source of a harm," the harm itself, and the liability that results from that harm. To reduce the confusion that has resulted from these varied uses of the term, we believe the better approach is to utilize the term "nuisance" to refer not to a cause of action or to the defendant's conduct or

5

> operations, but instead to the particular type of *legal injury* that can support a claim or cause of action seeking legal relief.
>
> In other words, we clarify that the term "nuisance" describes a type of injury that the law has recognized can give rise to a cause of action because it is an invasion of a plaintiff's legal rights. The law has recognized numerous types of legal injuries, including injuries to a person's body, reputation, property, right to privacy, or right to exclusive possession of property. The law of nuisance recognizes that certain injuries to a person's right to the "use and enjoyment of property" can also constitute a form of legal injury for which a legal remedy will be granted.
>
> . . . Today we clarify that the term "nuisance" does not refer to the "wrongful act" or to the "resulting damages," but only to the legal injury—the interference with the use and enjoyment of property—that may result from the wrongful act and result in the compensable damages.

*Id*. at 594-95 (citations omitted).

6. In *Gardiner*, the supreme court made clear that its holding was not intended to reduce the availability of any legal remedy—for the court believed that relief for an actual nuisance could be obtained through existing causes of action. For example, a negligently committed actual nuisance could be framed as an ordinary-negligence claim, while an intentionally committed actual nuisance could be framed as a claim for (1) trespass and/or (2) intentional invasion of or interference with property rights. *See id.* at 603 n.17, 607 & n.18. At no point in *Gardiner*, however, did the supreme court ever reference prospective nuisances. *Gardiner* did not abrogate the significant body of Texas law recognizing the viability of a prospective-nuisance claim, nor did *Gardiner* contend that a prospective-nuisance injury must be pursued through an ill-fitting ordinary-negligence claim that necessitates a showing of actual injury. *See generally Pruitt v. Box*, 984 S.W.2d 709, 711 (Tex. App.—El Paso 1998, no pet.) (recognizing that "actual injury" is element of negligence cause of action).

7. The Court must reject Defendants' invitation to extend *Gardiner*'s reasoning to prospective nuisances—an extension that no Texas appellate court or federal court has previously made. If the supreme court intended to use *Gardiner*

to abrogate existing law on prospective nuisances, the court would have undoubtedly done so clearly and not by implication—i.e., it would have set for itself the same standard it holds for any legislative abrogation of common-law claims. *Cf. Cash Am. Intern. Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000) ("Abrogating common-law claims is disfavored and requires a clear repugnance between the common law and statutory causes of action." (internal quotation marks omitted)). Accordingly, the Court should find that Texas continues to recognize a claim for prospective nuisance.

8. To the extent that *Gardiner* can be construed as requiring the Butterfly Center to label its prospective-nuisance claim as a *negligent* prospective nuisance or an *intentional* prospective nuisance, the facts alleged in the Third Amended Complaint ("the Complaint") support a determination that Defendants are at least liable for a negligent (if not an intentional) prospective nuisance. The Complaint states that "Defendants refused to wait for testing and inspections because they planned to be long gone with their donors' money before plans could be vetted . . . , leaving Butterfly Center and other local landowners to suffer as a direct result [of] their *negligence*." ECF #55 at ¶ 16. The Complaint further relevantly alleges that "Defendants ignored the government's request to study their plans"; that Defendants completed the wall "[t]hough proper studies and permissions were never obtained"; and that "[t]he subject wall's construction was haphazard, was rushed, and involved too many cut corners to ensure it functioned as designed in the long term." ECF #55 at ¶¶ 17, 18, 20.

**C. The Complaint articulates a viable prospective-nuisance claim against Defendants.**

9. In *Freedman v. Briarcroft Property Owners, Inc.*, the Texas Fourteenth Court of Appeals rejected the defendant/appellant's argument that plaintiff's nuisance claim—which concerned an unbuilt parking lot (i.e., a prospective nuisance in fact)—was not "ripe" for litigation. 776 S.W.2d 212, 216 (Tex. App.—

Houston [14th Dist.] 1989, writ denied). In rejecting the argument, the Fourteenth Court stated the following about law of nuisance:

> In point of error three, appellants contend the trial court erred in denying . . . their motion for new trial based on the contention that the issue of nuisance was not "ripe" for litigation. . . . Therein, appellants appear to contend that appellee was required to wait until the parking lot was in existence before appellee could complain of threatened injury.
>
> The law of nuisance may be divided into two categories; nuisance per se and nuisance in fact. A nuisance per se or at law is an act, occupation, or structure which is a nuisance at all times, regardless of location. A nuisance in fact or per accidens is one which becomes a nuisance by reason of circumstances and surroundings. *Id.* What constitutes a nuisance is one of degree and usually turns on a question of fact. Occasionally, the issue of the existence of a nuisance also raises questions involving technical propositions of law and matters of public policy. Precedents drawn from various cases are usually of little value because of the differences in the facts and circumstances. Every case must stand on its own footing. Whether a nuisance exists is a question to be determined not merely by a consideration of the thing itself, but with respect to all attendant circumstances.
>
> The general rule is that an injunction will be granted only to restrain an existing nuisance and not to restrain an intended act on the ground that it may become a nuisance. However, a court of equity is empowered to interfere by injunction to prevent a threatened injury where an act or structure will be a nuisance per se, *or will be a nuisance for which there is no adequate remedy at law, or where a nuisance is imminent.* When an attempt is made to enjoin an anticipated nuisance, the threatened injury must not be merely probable but reasonably certain before a court will exercise its equitable power to restrain it.
>
> Although a parking lot is not a nuisance per se, the parking lot did not have to be in existence to bring this claim. Appellants' intent to create the parking lot was imminent. Whether appellants' conduct constituted a threatened nuisance was for the fact-finder. However, appellee's suit was certainly ripe enough to complain of appellant's imminent conduct. Point of error three is overruled.

*Id*. (citations omitted; emphasis added).

10. The body of the Complaint, in conjunction with its attached exhibits, more than sufficiently alleges that the subject wall is reasonably certain to cause

8

injury to the Butterfly Center's real property. ECF #55 at ¶¶ 18, 23; ECF #55-4. Attached to the Complaint are two affidavits from Mark Robert Tompkins, a civil and environmental engineer. ECF #55-4. Some of the notable statements from Tompkins' affidavits include the following:

- "I expect with a high degree of scientific certainty that continued adjustment, especially adjustment that occurs during extreme high flows, will damage National Butterfly Center lands immediately upstream of the fence." ECF #53-4 at 3.

- "When extreme flow events, laden with sediment and debris, completely undermine the foundation of the fence and create a flow path under the fence or cause a segment of the fence to topple into the river, unpredictable and damaging hydraulics will occur at the failure site(s). The unpredictable hydraulics at future failure site(s) will exacerbate damage to adjacent lands caused by the intact fence by locally increasing the rate and severity of damaging erosion and scour, thereby increasing impacts to adjacent lands as the river rapidly adjusts." ECF #53-4 at 4.

- "In late August of 2020, Fisher Industries already departed from the approach described in their July 6 maintenance plan by placing non-engineered rock fill on the banks of the Rio Grande along the river side of their private bollard fence. . . . The rock placement will also initially exacerbate redirection of erosion and scour impacts on National Butterfly Center lands by creating a temporary hard point that redirects flow energy." ECF #53-4 at 5.

- "I expect with a reasonable degree of scientific certainty that if constructed, the 15,600 foot long, 18 foot tall bollard fence will change hydraulic, sediment transport, and debris transport conditions in and along the Rio Grande River adjacent to, upstream of, and downstream of the proposed fence during future high flow events. In addition, I expect with a reasonable degree of scientific certainty that these hydraulic, sediment transport, and debris transport changes will detrimentally impact lands owned by the National Butterfly Center. These detrimental impacts could include topographic and vegetative changes detrimental to the ecological values of the National Butterfly Center's land as well [as] changes in erosion patterns that could effectively remove portions of the land and changes in deposition patterns that could effectively destroy portions of the land." ECF #55-1 at 2.

11. Through Tompkins' affidavits, the Complaint sufficiently alleges that the prospective injury to the Butterfly Center's property is *imminent*. In

relation to this point, Defendants negligently or intentionally engage in a butchered reading of Tompkins' August 28, 2020 affidavit ("the second affidavit"), as reflected in their motion to dismiss. In their motion, Defendants wrongly claim—with bold and italicized lettering, no less—that Tompkins' second affidavit indicates that the Butterfly Center's property will not be damaged until over 100 years from now. ECF #62 at 10. Defendants' "100 years" reference comes from the following sentence in Tompkins' second affidavit:

> In order to adequately assess the impacts of any structure on surrounding lands one must carefully consider fluvial geomorphology, that is the long-term (100 years or more) evolution of river channel, banks, and floodplain as it adjusts to altered physical conditions.

ECF #55-4 at 3.[2] In other words, Tompkins is stating that, to understand how the subject wall will affect the adjacent river, one must also understand the river's historical evolution for at least the last 100 years. Tompkins is very clearly *not* opining that the subject wall will not injure the Butterfly Center's property until more than 100 years into the future. In light of Defendants' miscomprehension of this straightforward point, the Court should take their additional analysis of Tompkins' affidavits and the MEG Report with a grain of salt.

12.     Tompkins' affidavits do not provide a date certain for when the subject wall will proximately cause damage to the Butterfly Center's property. But this is not required to demonstrate the existence of an *imminent* harm. An "imminent harm" analysis under both Texas and federal law focuses on the certainty of any injury—not the existence of a strict temporal requirement.[3] Even the legal authority cited in Defendants' motion to dismiss supports this point. *See*

---

[2] "'Fluvial geomorphology' is the study of streams and related land forms." *City of Mountain Park, Georgia v. Lakeside at Ansley, LLC*, No. 1:05-CV-2775, 2009 WL 10665770, at *14 n.15 (N.D. Ga. Jan. 6, 2019).

[3] *See, e.g., Kendall Appraisal Dist. v. Cordillera Ranch, Ltd.*, No. 04-03-00150-CV, 2003 WL 21696901, at *3 (Tex. App.—San Antonio July 23, 2003, no pet.) (mem. op.) ("Probable imminent injury requires proof of an actual threatened injury, not a speculative or purely conjectural one."); *Sw. Ctr. For Biological Diversity v. Babbitt*, No. CIV. 997-0474 PHX-DAE, 2000 WL 33907602, at * (D. Az. Sept. 26, 2000) ("Imminent harm must be reasonably certain to occur." (internal quotation marks omitted)).

ECF #62 at 15-16 (citing *Sierra Club v. United States Army Corps of Engineers*, No. 1:20-CV-00460, 2020 WL 5096947 (W.D. Tex. Aug. 28, 2020)). In *Sierra Club*, the district court found that the plaintiff failed to show a threat of imminent harm because there was no showing that a harm was "likely," explaining:

> *Sierra Club misses the mark on showing a threat of imminent harm because*, even if continued horizontal directional drilling is certain, and even though Kinder Morgan admitted that even the most thorough review couldn't identify every single possible void, *Sierra Club has not shown that **any harm** resulting from future horizontal directional drilling **is likely***.

2020 WL 5096947, at *11 (citations and internal quotation marks omitted; emphasis added). Furthermore, when the United States Supreme Court discussed "imminence" in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), it did not "impos[e] a strict temporal requirement that a future injury occur within a particular time period following the filing of the complaint. Instead, the Court focused on the *certainty* of that injury occurring in the future, seeking to ensure that the injury was not speculative." *Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309, 343 (2d Cir. 2009) (discussing *Lujan*), *rev'd on other grounds*, 564 U.S. 410 (2011).

      13.     For reasons already explained, the Complaint—while encompassing Tompkins' affidavits—establishes that the subject wall is certain to result in injury to the Butterfly Center's property. *See supra* ¶ 8. Accordingly, the Complaint sufficiently articulates a probable and imminent injury. To the extent the Court believes that establishing "imminent harm" entails a showing that the harm is likely to occur in the near future, the Complaint has articulated sufficient facts to support the conclusion that this is probable. The Complaint and its attachments establish (1) that the subject wall has been fully built; (2) that the subject wall is already causing erosion despite the wall's short existence and a surrounding low waterflow; (3) that the subject wall has already caused "major changes" that are readily observable; (4) that "erosion and scour" are already "undermining" the subject wall's foundation; (5) that Fisher Defendants currently have no clear plan for maintaining debris captured by the subject wall; and (6) that Fisher Defendants

have recently placed non-engineered rock along the subject wall, which will "exacerbate redirection of erosion and scour impacts on National Butterfly Center lands." ECF #55-3, #55-4.

14. The Complaint thus puts forth sufficient factual allegations from which one can conclude:

- that the subject wall will have a "snowball effect" on physical conditions in the Rio Grande floodway;
- that the "snowball" has already started rolling (e.g., the structural integrity of the subject wall has already been compromised; the subject wall has already caused erosion to its immediately surrounding land, etc.); and
- that the currently rolling "snowball" will inevitably injure the Butterfly Center's property in the near future.

In the context of a prospective-nuisance claim concerning an anticipatory environmental injury, the Court should find that the Complaint more than adequately articulates an imminent injury. Though Defendants repeatedly insist in their motion that the Butterfly Center's claim fails because the Complaint does not allege an existing injury to its property, that insistence is entirely misguided in the context of a prospective-nuisance claim. *See Freedman*, 776 S.W. at 216 ("[A] court of equity is empowered to interfere by injunction to prevent a threatened injury where an act or *structure . . . **will be** a nuisance* for which there is no adequate remedy at law, or where the nuisance is imminent." (bold and italics added)). Texas law clearly does not compel the Butterfly Center to allege an existing injury when pursuing a prospective-nuisance claim.

15. At various points in their motion to dismiss, Defendants demand additional details and explanations in relation to Tompkins' various opinions. Defendants seemingly forget that they are arguing a Rule 12(b)(6) motion—not a *Daubert* motion. That said, the Complaint—with the aid of Tompkins' affidavits— provides more than fair notice of the Butterfly Center's prospective-nuisance claim and the factual allegations supporting it. *See Ashcroft*, 556 U.S. at 678. The

additional factual details that Defendants seek do not merit dismissal. *See Ysasi*, 205 F. Supp. 2d at 686.

16. Moreover, through Tompkins' affidavits, the Complaint alleges that the subject wall will inevitably affect waterflow, which will in turn cause the waterflow to eat away at that portion of the Butterfly Center's property that abuts the river. ECF #55-1; ECF #55-4. This allegation supports a determination that the subject wall will cause an irreparable injury to the Butterfly Center's property for which there will be no adequate remedy at law.

- *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment.").
- *Puerto Rico Conservation Found. v. Larson*, 797 F. Supp. 1066, 1070-71 (D.P.R. 1992) (finding that irreparable injury would occur unless construction was enjoined because evidence indicated that construction would result in surface erosion).[4]

17. The Complaint also alleges sufficient facts to support the conclusion that Defendants are liable for the prospective nuisance—i.e., the now-completed subject wall. The Complaint alleges (1) that Neuhaus owns the property on which the subject wall is located;[5] (2) that Neuhaus and Fisher Defendants control access

---

[4] Because the Butterfly Center's basis its request for relief on state law, there is a question as to whether state law on injunctive relief should guide the Court's review here rather than federal law. *See generally* Wright & Miller, 19 FED. PRAC. & PROC. JURIS. § 4513 ("The Erie Doctrine and the Equitable-Remedial Rights Doctrine") (3d ed. Oct. 2020 update) ("Therefore, as a general rule, when forum state law defines the underlying substantive right, state law also governs the availability of such equitable remedies as a permanent injunction, specific performance, rescission, an accounting, or equitable defenses and related equitable principles and defenses."). If state law governs, the Court should note that pursuant to Texas Civil Practice & Remedies Code § 65.011, "[a] writ of injunction may be granted if . . . irreparable injury to real or personal property is threatened, irrespective of any remedy at law." TEX. CIV. PRAC. & REM. CODE § 65.011.

[5] *See Freedman*, 776 S.W.2d at 214 (noting that the prospective-nuisance suit was brought against "Barry Lewis, beneficial owner" of land on which parking lot was to be built).

to the subject wall; (3) that Fisher Defendants are charged with maintaining the wall; (4) that Fisher Defendants are charged with addressing erosion surrounding the subject wall; and (5) that Fisher Defendants are charged with remedying debris-created obstructions along the subject wall. ECF #55 at ¶ 13; ECF #55-4. The Complaint thus adequately sets forth a factually sufficient basis for why Defendants should be the target of a prospect-nuisance claim and any permanent-injunctive relief afforded.

18. Lastly, there is no issue with the Butterfly Center's request for a permanent mandatory injunction directing Defendants to dismantle and remove the subject wall. Such injunctions are proper to address an actual or threatened injury to land. In *Nichols v. Culver*, for example, the Eastland Court of Appeals affirmed a permanent mandatory injunction that compelled the defendant-landowner "to remove a dam along the [defendant-landowner's] fence line between the [plaintiff's and defendant's properties] and allow surface waters to follow its natural course." 466 S.W.2d 671, 671 (Tex. Civ. App.—Eastland 1971, writ ref'd n.r.e.). This injunctive relief was granted in response to evidence showing that the defendant's dam had cause and would continue to cause an accumulation of water on the plaintiff's property. *Id.* at 671-72.

19. Under Texas law, "[t]o be entitled to a permanent injunction, a plaintiff must plead and prove (1) a wrongful act; (2) imminent harm; (3) irreparable injury; and (4) no adequate remedy at law." *Leibovitz v. Sequoia Real Estate Holdings, LP*, 465 S.W.3d 331, 350 (Tex. App.—Dallas 2015, no pet.). Here, the "wrongful act" entails Defendants' construction and/or ongoing control over the subject wall, which will inevitably detrimentally impact the property of nearby landowners, including that of the Butterfly Center. For reasons already explained herein, the Complaint articulates facts that satisfy the second, third, and fourth evidentiary element for obtaining a permanent injunction. Moreover, Texas law permits "the extraordinary remedy of permanent mandatory injunction compelling the alteration, or removal of property" when "serious injury is being inflicted or, in all probability, will be inflicted." *Nolte Irrigation Co. v. Willis*, 180

S.W.2d 451, 455 (Tex. Civ. App.—Amarillo 1944, writ ref'd w.o.m.). And as already explained, the Complaint—in conjunction with Tompkins' affidavits—when viewed (as it must) in the light most favorable to Plaintiffs—permits one to conclude that the subject wall will, in all probability, inflict serious injury on the Butterfly Center's property.

### IV.   CONCLUSION

20. For all the reasons provide above, the Court should deny Fisher Defendants and Neuhaus' request for dismissal.

Respectfully submitted,

**PEÑA AND VELA, P.L.L.C.**
203 South 10th Street
Edinburg, Texas 78539
Phone: (956) 383-0751
Fax: (956) 383-5980
Email: office@penavelalaw.com

By: */s/ Javier Peña*_____
JAVIER PEÑA
State Bar No. 24005092
REBECCA VELA
State Bar No. 24008207

## CERTIFICATE OF SERVICE

    I hereby certify that on November 19, 2020, all counsel of record who have consented to electronic service were served with a copy of this document via the Court's CM/ECF system.

/s/ *Javier Peña*
Javier Peña