UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN BUTTERFLY ASSOCIATION d/b/d THE NATIONAL BUTTERFLY CENTER, AND MARIANNA TREVINO *Plaintiffs* | § § § § § § § | |
| VS. | § § § § | CASE NO. 7:19-cv-00411 |
| NEUHAUS & SONS, LLC, BRIAN KOLFAGE, AND WE BUILD THE WALL INC. et al *Defendants* | § § § § | |

___

**DEFENDANTS' REPLY
TO PLAINTIFFS' RESPONSE TO
FISHER'S SECOND AMENDED MOTION TO DISMISS**
___

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW **FISHER INDUSTRIES, FISHER SAND AND GRAVEL CO.,** and **NEUHAUS & SONS, LLC.,** Defendants herein and file this their Reply to Plaintiff's Response to Defendants' Second Amended Motion to Dismiss and would respectfully show as follows:

1. **Neuhaus' Motion was Timely.** Plaintiffs argue that that Neuhaus' Motion to Dismiss is untimely pursuant to Fed. R. Civ. P. 12(g) because, according to Plaintiffs,

1

Neuhaus did not file a motion to dismiss in response to Plaintiffs' Original Complaint. Plaintiffs misread Rule 12(g).

2. First, it should be noted that the Court ordered that Defendants shall have 30 days from September 30, 2020 to respond to Plaintiffs' Third Amended Complaint. (Docket No. 60). Defendants' Second Amended Motion to Dismiss was filed on October 29, 2020, within the time ordered by the Court.

3. Second, Rule 12(g)(2) permits the Motion to Dismiss filed by Neuhaus, and provides as follows:

> *(2) Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.
>
> (h) WAIVING AND PRESERVING CERTAIN DEFENSES. …
>
> (2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
>    (A) in any pleading allowed or ordered under Rule 7(a);
>    (B) by a motion under Rule 12(c); or
>    (C) at trial.

FED. R. CIV. P. 12.  As can be seen, one of the exceptions to Rule 12(g)(2) is Rule 12(h)(2) which expressly permits a defendant to raise the defense of failing to state a claim in any pleading allowed or ordered.  This responsive pleading was allowed by Court order.  The cases cited by Plaintiff all deal with venue issues which are inapplicable to the current situation.

4. ***Crosstex* Applies.**  Plaintiffs mischaracterize Defendants as arguing that a prospective nuisance claim does not exist under Texas law pursuant to *Crosstex N. Tex.*

*Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016). Defendants do not make such an argument. Rather, Defendants argue that Plaintiff's nuisance claim, prospective or otherwise, must comply with Texas law which was most recently articulated by the Texas Supreme Court in the *Crosstex* case.

5. The first issue raised by Defendants' Motion to Dismiss is Plaintiff North American Butterfly Center's failure to articulate any legal cause of action in Plaintiff's Third Amended Complaint. *See* Fisher's Motion to Dismiss, pp. 5-8, §§ IV-V. In response, Plaintiff does not request the opportunity to replead, and instead, Plaintiff stands on its pleadings. Plaintiff then points to a single reference to the word "negligence" in its Complaint. *See* Plaintiff's Response to Fisher Defendants' Motion to Dismiss, P. 7, ¶ 8. The single reference reads as follows:

> "Defendants refused to wait for testing and inspections because they planned to be long gone with their donor's money before plans could be vetted…, leaving Butterfly Center and other local landowners to suffer as a direct result [of] their negligence." Plaintiff's Third Amended Complaint, p. 5, ¶ 16.

6. The Third Amended Complaint also alleges:

   a. Defendants ignored the government's request to study their plans…"
   b. "Defendants completed the well [t]hough proper studies and permissions were never obtained…" and
   c. "[t]he subject wall's construction was haphazard, was rushed, and involved too many cut corners to ensure it functioned as designed in the long term." *Id.,* pp. 5-6, ¶¶17, 18, 20

These allegations are inadequate to assert a negligence claim against any of the Defendants in this action.

7. The elements of a negligence claim in Texas are well established. Plaintiff must prove (i) a legal duty owed to Plaintiff; (ii) breach of that legal duty, (iii) causation, and (iv) damages. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). While Plaintiff

3

uses the term "negligence" once in Plaintiff's Third Amended Complaint, Plaintiff has failed to allege any facts implicating a specific legal duty owed to Plaintiff or the breach of that legal duty.

8. More specifically, Plaintiff has dismissed its claim under the Texas Water Code. Thus, the Texas Water Code cannot be the vehicle to impose a legal duty on any Defendant to Plaintiff. Similarly, Plaintiff has no standing to assert any claims under any U.S. Treaties. Quite simply, Plaintiff cannot allege that any treaty creates a private cause of action in its favor which is available against any of the Defendants in this action. Thus, irrespective of whether the Defendants have complied with the regulatory requirements promulgated by the IBWC or ignored them completely, the treaties and the associated regulations do not create a legal duty owed by any of the Defendants to Plaintiff.

9. Moreover, this matter is not a class action or collective action, and Plaintiff does not allege to be asserting claims in a representative capacity for others. As a result, the damages purportedly suffered by "other local landowners" does not create a duty owed by any of the Defendants to Plaintiff. Instead, Plaintiff must allege a breach of a legal duty owed to Plaintiff and damages suffered by Plaintiff caused by breach of that specific legal duty.

10. Further, Plaintiff is not in privity with any of the Defendants. Therefore, Plaintiff cannot allege a legal duty arising out of any land purchase agreements, construction contracts, or design/build contracts involving the Defendants. Any alleged design or construction defects or irregularities are to be resolved by and between the parties to those agreements and contracts. Thus, whether the wall was rushed or delayed, whether it was a perfect design or an inadequate design, whether it was constructed methodically or

haphazardly, and whether it achieves its design function or fails, is all irrelevant unless and until Plaintiff pleads facts establishing a legal duty of care owed to Plaintiff by these Defendants and facts suggesting a potential breach of that duty of care.

11. The existence of a legal duty is a question of law in Texas. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). The legal duty, if any, owned by any of the Defendants to Plaintiff determine the standard of care for evaluating the conduct of Defendants. As a result, it is critical to providing fair notice of the claims in this action. Plaintiff's Third Amended Complaint is fatally defective in that Plaintiff fails and refuses to allege facts giving rise to any legal duty owed to Plaintiff or a breach of that specific legal duty.

12. The analysis is the same for any alleged intentional tort cause of action. Plaintiff refuses (even in the Response to the Motion to Dismiss) to allege any intentional tort causes of action. Plaintiff failed to allege a trespass cause of action, a conversion cause of action, or any of the other potential intentional tort which would conceivably support recovery for the alleged legal injury of nuisance. Merely reciting that the wall is an intentional prospective nuisance does not in any way reference or assert an actual legal cause of action in Texas.

13. Plaintiff's Response to the Motion to Dismiss erroneously relies upon case law prior to *Crosstex* in an effort to obfuscate the issue. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner,* 505 S.W.3d 580 (Tex. 2016). The Texas Supreme Court, in *Crosstex*, begins with Dean Prosser's famous quote that there "is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance,'" and then the Texas Supreme Court immediately proceeds "to provide a more comprehensive, though certainly not

exhaustive, explanation of the circumstances in which Texas law may hold a party liable for causing a private nuisance." *Id.*, 505 S.W.3d at 591. Instead of addressing *Crosstex,* Plaintiff merely retreats into the prior "impenetrable jungle" of case law so as to attempt to avoid the clear and unambiguous language of *Crosstex:* **nuisance is not a cause of action or a description of a defendant's conduct, it is a species "of legal injury that can support a claim or cause of action seeking legal relief."** *Id.*, 505 S.W.3d at 594 (emphasis added). To provide fair notice of the claims in this action, Plaintiff must plead both: (i) a legal cause of action, and (ii) the legal injury of nuisance.

14. There is no authority for the proposition that the legal injury of nuisance, standing alone, is a viable cause of action after *Crosstex*. Merely adding the word "prospective" to modify the term "nuisance" does not create a legal cause of action. It simply indicates that the alleged legal injury, as defined in *Crosstex*, has yet to occur. To the extent any Texas Civil Courts of Appeal previously suggested otherwise, the case law does not survive *Crosstex*. Quite simply, irrespective of whether the legal injury of nuisance is prospective, historical, or continuing and ongoing, Plaintiff still must come forward with a viable cause of action which permits recovery for that specific alleged injury.

15. **Nothing Substantial Alleged.** Plaintiffs spend the majority of their response arguing about imminence, but say nothing about whether the claimed injury of nuisance is alleged to be substantial. For the legal injury of nuisance, the interference with Plaintiff's property must be "**substantial.**" *Id.*, 505 S.W.3d at 595 (emphasis added). Defendants' property and the Butterfly property are both located within the flood plain and will be flooded in the future high flow events at the heart of Dr. Thompkins' opinions. There could be no use by Plaintiff of the Butterfly Center property during a high flow event. The property will

be flooded because it is located within the flood plain. Thus, Plaintiff has failed to articulate or allege any substantial interference with its use and enjoyment of the property. But it is clear that as of this time, despite the fact that the fence has been up for over eight (8) months, there is still no allegation that the fence has caused any actual interference with the Butterfly Center's property, let alone that the interference is substantial. Plaintiff cannot allege the facts suggesting a future substantial interference because Plaintiff has no idea of what the actual damage will be, if any.

16. **No Actual Interference alleged.** Not only must the nuisance condition be substantial but it must interfere with the use and enjoyment of land by causing an unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Crosstex* at 593 (A private 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it.") Both of these properties are located in the flood plain, and both properties experience the same conditions as any other property located in the flood plain of the Rio Grande, such as bank erosion from wave action. And all properties on this side of the levee experience flooding during high flow events even before this complained of fence. Mr. Thompkins' opinions are based on high flow events. Despite the legal arguments presented by Plaintiff about what this fence may possibly do in the future, what plaintiffs don't state in any way is how this alleged possible future nuisance will in any way interfere with their use of their property in any way. No facts are alleged on that element at all. In all of the cases cited by Plaintiffs there was some articulation of tangible interference from the claimed nuisance that would impair Plaintiff's

use of Plaintiff's property. But in this case there is no such articulation, because there is no interference either now or in the future.

17. **Thompkins Affidavit does refer to the Long Term.** Plaintiffs attempt to rehabilitate their own expert's claims by stating that Defendants are misreading the Thompkins Affidavit when he refers to this claimed damage manifesting in 100 years or more. This is not a misreading of the Thompkins Affidavit. Mr. Thompkins states that he is evaluating long term impacts to the Butterfly Center property. In fact, Mr. Thompkins, immediately after the "100 year" remark, states:

> Further, as discussed above, one must account for numerous high flow events to adequately assess the long term impacts of massive structures like Fisher Industries' private bollard fence on surrounding land in highly erodible river corridors like the Rio Grande. The River must adjust, as it has already during low flows, and I expect with a high degree of scientific certainty that continued adjustment, especially adjustment that occurs during extreme high flows, will damage National Butterfly Center land immediately upstream of the fence. (Document 56-4, page 3).

18. "Long term impacts" are certainly not imminent and say nothing about whether it is even substantial to another property located in the same flood plain that is experiencing the very same high flow/flood events. The point is that saying another property in the flood plain will be impacted during a future flood event does not allege a substantial interference to Plaintiff's property, regardless of whether it is imminent or not.

19. Despite the arguments by Plaintiff, plaintiff has not alleged a claim or cause of action which permits recovery for the legal injury of nuisance, has not alleged any facts showing that Plaintiffs has or will at any time suffer any substantial interference with its use and enjoyment of its property, and has failed to allege the minimum facts necessary to support a claim for permanent injunction.

8

WHEREFORE, Premises Considered, Defendants Fisher Industries, Fisher Sand and Gravel Co., and Neuhaus & Sons, LLC. pray that this Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted and that Plaintiffs' nuisance claims against these Defendants be in all things dismissed, and for recovery of all of Defendants' costs associated in defending these claims.

Respectfully submitted,

/s/ Mark J. Courtois
MARK J. COURTOIS
Texas Bar No. 04897650
Email: mjcourtois@ffllp.com
Direct: 713-620-7226

FUNDERBURK FUNDERBURK COURTOIS, LLP
2777 Allen Parkway, Suite 1000
Houston, Texas  77019
(713) 526-1801
(713) 526-2708 - FAX

ATTORNEY IN CHARGE
FISHER INDUSTRIES, AND FISHER SAND AND GRAVEL CO.


/s/ Lance A. Kirby*
LANCE A. KIRBY
Texas Bar No. 00794096
Fed. ID No. 21811
Email: lakirby@jgkl.com

JONES, GALLIGAN, KEY & LOZANO, L.L.P.
2300 West Pike Boulevard, Suite 300
Weslaco, Texas 78596
(956) 968-5402
(956) 968-6089 Fax

ATTORNEY IN CHARGE
NEUHAUS & SONS, LLC
*signed by permission by MJC

**CERTIFICATE OF SERVICE**

    I, MARK J. COURTOIS, hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known Filing Users AND has been accomplished by Notice of Electronic Filing pursuant to Local Administrative Procedure 9(a) on this, the 30th day of November, 2020.

                                      */s/ Mark J. Courtois*
                                      MARK J. COURTOIS